HALLIDAY *v.* BANK OF STEWART COUNTY.

Where one deposits property with another as security for the payment of a debt, such property is thereafter held in pledge ; but the effect of the transaction is not to divest the title of the pledgor. It only invests the pledgee with a qualified interest in such property for the purpose of the pledge. After the maturity of the debt secured by pledge, the pledgee may sell the property and divest the title of the pledgor therein, provided he gives thirty days notice of his intention to sell, and the sale is made in public, fairly conducted, and to the highest bidder ; or he may sell as stipulated in the contract of bailment, if it provides for a sale otherwise than under the statute. If, however, the sale be under the statute, its terms must be complied with, or the sale will amount to a conversion, giving the pledgor a right of action in trover.

Argued December 3, — Decided December 20, 1900.

Trover.   Before  Judge  Littlejohn.   Stewart  superior  court. April term, 1900.

*J. H. Worrill, Clarke & Harrison,* and *S. T. Pinkston,* for plaintiff.   *Allen Fort* and *Hickey & Fort,* for defendant.

LITTLE, J.   Halliday instituted an action of trover against the Bank of Stewart County, to recover possession of two hundred and thirty-three bales of cotton.   On the trial of the case the plaintiff introduced evidence which tended to show the following facts:

Halliday was a cotton-buyer, and arranged with the bank to pay for such cotton as he might purchase, and warehouse receipts for the cotton were deposited with the bank as the cotton was paid for. Under this arrangement the bank had paid about $5,500 or $5,600 for the cotton in question, holding the receipts in pledge.   The contract further stipulated that Halliday was to keep the bank protected by a deposit to cover a depreciation in the value of the cotton.   The bank desired tó collect the amount due by Halliday, and the latter drew a draft on Blanchard, Humber & Co., cotton merchants in the city of Columbus, payable to the bank, for the amount of the indebtedness, and attached a bill of lading, it being drawn to Halliday's order, notify Blanchard, Humber & Co.; and the cotton was duly shipped to Columbus under said bill of lading. This draft was not paid, and the cotton being in Columbus, it was agreed between the parties that W. C. Bradley, another cotton merchant in the city of Columbus, should handle the cotton, and sell the same and pay out of the proceeds the amount due the bank, turning over the balance to Halliday.   This agreement was not executed; but the bank, without any authority, through one of its officers, sold the cotton to other parties for a price below its value. It was contended that such sale by the bank was a conversion of the cotton to its own use, and entitled the plaintiff to recover in trover.   The price of the cotton was proved in connection with the above; and this constituted the evidence submitted by the plaintiff in relation to the title.

The plaintiff having closed, the defendant moved for a nonsuit on the ground that the plaintiff had failed to show title to the property.   The motion was granted, and the plaintiff excepted.

The question which arises, under the evidence, is whether or not the title of the cotton was in the plaintiff at the time of the insti-

tution of the suit. Fairly construed it shows that the cotton, through the medium of receipts therefor, was delivered in pledge by Halliday to the bank to secure the amount of his indebtedness created by the advancement of the purchase-price of the cotton. Under section 2956 of the Civil Code, a delivery of the property is essential to a bailment of this character; but it is also expressly provided that warehouse receipts and bills of lading, which are symbolical of the property, may be delivered in pledge, and, when so delivered, they become the equivalent of the property which they represent. *Citizens Banking Co.* v. *Peacock & Carr*, 103 *Ga.* 171. The effect of the delivery of the cotton under a contract of this character is not to divest the title of the pledgor to the property, but to invest the pledgee with a special property in the cotton for the purposes of the bailment. Civil Code, § 2960. So that, under the contract shown, after delivery of the receipts the plaintiff held the general title to the cotton, and the bank had a special property in it for the purpose of applying its proceeds to the payment of the debt due by Halliday thus created. The interest that the bank had in the cotton was not a lien, but a special property, and it was entitled to hold the cotton against the true owner until the latter had paid his debt. In the event that he did not do so, it was the right of the pledgee, after maturity of the debt, to sell the cotton and apply the proceeds to the payment of the debt. Such a sale, if legally made would have divested the title of Halliday and put in the purchaser a good and valid title to the cotton. But, in order for such sale to have this effect, it is necessary that the pledgee should give notice for thirty days to the pledgor of his intention to sell, and such sale should be made in public to the highest bidder. Civil Code, § 2958. The pledgee had no authority to make a sale of the cotton except in the manner authorized by the statute, unless by contract the parties had otherwise agreed. No such agreement appears by the evidence, and the rights of the parties are to be determined under the above-stated general rule applicable to the sale of property delivered in pledge. The evidence also tended to show that the requirements of the statute were not met by the pledgee in the sale of the cotton, which, as testified by himself, was against his consent; and it must therefore be taken, under the present record, that the sale was unauthorized either by law or by the contract between the parties, and it must follow that such sale did not have the effect to

divest the title of Halliday.    This court, in the case of *Waring* v. *Gaskill*, 95 *Ga.* 731, ruled that an unauthorized sale of collaterals was a conversion of the property, and such a ruling is supported by sound principle.    The bailment, as said above, does not divest the title of the owner, but vests in the pledgee a qualified property in the bailed goods for a particular purpose, that of securing to the pledgee so much of the value of the goods as may be necessary to pay the debt in the event the pledgor fails to do so.    But this appropriation can only be made in a particular way, and if not so made the purposes of the bailment are not complied with, and any other kind of an appropriation of the property is illegal.    Being illegal, the unauthorized appropriation amounts, on the part of the pledgee, to a conversion of the property to his own use.    So then, under the evidence, title in Halliday as well as conversion by the pledgee is shown; and the value of the property appearing, the plaintiff is prima facie entitled to recover.    What may be the respective rights of the parties after a full hearing we of course can not say; and as to what may be the measure of the recovery, if one is then authorized, is altogether another question which we are not called on to determine.    See, in this connection, *Holmes* v. *Langston & Woodson*, 110 *Ga.* 861–7; *Hays* v. *Jordan*, 85 *Ga.* 741.    The extent to which our ruling goes is that, under the facts as they appear, the plaintiff below was entitled to a recovery, and being so, the nonsuit should not have been granted.

*Judgment reversed.    All concurring, except Fish, J., absent.*