CITY ELECTRIC RAILWAY CO. *v.* FLOYD COUNTY.

1. Where a disputed claim, dependent upon a legal question, is settled and adjusted by the parties, and a contract between them is accordingly made whereby one promises to pay to the other a sum of money, the promisor is bound thereby, though such question be really free from doubt, and properly resolved would have absolved him from all liability.
2. There was no error in admitting evidence.

Submitted May 1,—Decided June 7, 1902.

Equitable petition. Before Judge Henry. Floyd superior court. October 15, 1901.

The Rome Street Railroad Company was incorporated by the General Assembly in 1884 (Acts 1884–5, pp. 191, 235). Its railroad was built and equipped as a horse-car line, and the line was extended over the bridges in Rome (see 77 *Ga.* 616). In 1892, when the company was about to change the railroad from a horse-car line to an electric-car line, the county authorities, contending that this would greatly increase the servitude upon the bridges and the risk of danger, etc., declined to allow the bridges to be crossed by the new tracks, unless compensation should be made for such use. As a result of negotiations which ensued between the company and the county, an agreement was executed on February 25, 1892, between these parties, whereby the county granted to the company the right to lay and maintain a single track on one side of each of three designated bridges, to place thereon electric wires and appliances, and to run cars over the same; and the company agreed to pay to the county $100 annually for each bridge used, "in consideration of the grant herein named." The other stipulations of the contract are not material here. In 1896 the City Electric Railway Company, having succeeded to the possession of the properties, franchises, etc., of the company before named, applied to the county authorities for a reduction of the annual charge for the use of the bridges, and obtained a reduction of one third of the amount. A contract similar to the former one was entered into; and the company made the annual payment of $200 until 1898, when it ceased to make such payment. The county authorities, in February, 1900, resolved to have the tracks removed from the bridges; whereupon the company filed its petition for injunction, etc., contending that it had the right to use the bridges for its tracks and cars without

paying anything.    The county answered, setting up the contracts mentioned, and praying for judgment against the company for the past-due annual payments.    The case was submitted to the judge, who rendered judgment for the county for the amount due under the contract, and granted the injunction against the removal of the tracks.    The railroad company excepted.    The other essential facts appear in the opinion.

*J. Branham,* for plaintiff.
*W. J. Neel* and *Nat. Harris,* for defendant.

FISH, J.    In our opinion, the decision of this case turns upon the proper determination of the question, whether or not the contract entered into on February 25, 1892, between the Rome Street Railroad Company and Floyd County, was valid.    By the terms of that contract, the railroad company agreed to pay to the county a stipulated compensation annually for the right to construct and operate its electric-railway line across the three bridges in the city of Rome, belonging to the county.    If, as contended by the plaintiff in error, this contract was a nudum pactum, then the judgment of the court below was wrong; on the other hand, if this contract was based upon a sufficient consideration, then that judgment was right.    Before this contract was entered into, the county claimed that the company could not thus use these bridges without paying to it a reasonable compensation therefor, while the railroad company claimed that it had the right to so use them without the consent of the county, and without paying any compensation whatever.    Each party to the controversy appears to have been acting in perfectly good faith.    Pending these conflicting contentions, negotiations were entered into by the parties, which resulted in a settlement of the matter, under which the railroad company agreed to pay to the county the sum of one hundred dollars per annum for the use of each of the three bridges, and the county, for this consideration, granted to the company "the right to lay and maintain a single track on one side of" each bridge, "with the right to place electric wires and appliances and to run electric cars across said bridges."    We think that, under the evidence submitted, the presiding judge, who, by agreement of the parties, tried the case without the intervention of a jury, was authorized to find that this contract was the result of a compromise of the conflicting claims

of the parties. The county, in the beginning of the controversy, demanded a reasonable compensation for the use by the railroad company of the bridges, but ultimately agreed to accept an annual sum, which, according to the testimony of one of the witnesses, "was believed to be barely sufficient to cover the actual added expense and damage to said bridges by reason of such unusual and extra burdens." After the previously existing controversy between these parties had been compromised and settled, it mattered not which side thereof was right in its contentions; for the compromise and settlement of the dispute was a sufficient consideration for the agreement of the railroad company to pay the stipulated annual sum for its use of the bridges. The controversy arose over a question of law. If the railroad company originally had the right, under the power granted to it by the legislature, as we are inclined to think it had, to construct and operate its electric lines over the bridges in question, without the consent of the county and without paying anything whatever therefor, it lost this right when the dispute between it and the county was compromised and settled by the execution of this contract. If there had been no controversy between the parties as to their respective rights in the matter, and the county had simply charged the railroad company one hundred dollars per annum for the use of each of the bridges, and the company had simply agreed to pay this sum annually, the contract entered into might have been, as contended by the plaintiff in error, a nudum pactum, and, therefore, not binding upon the company. But this was not the case; the parties asserted conflicting claims, depending upon a question of law, and these claims were compromised and settled by the contract now under consideration. "Where parties have conflicting claims, depending upon a law point, and they compromise them, each is bound by the settlement, whether the law point turns out to have been for him or against him." *Morris* v. *Munroe*, 30 *Ga.* 630. See also *Spriggs* v. *Bramblett*, 54 *Ga.* 348; *Bass* v. *Bass*, 73 *Ga.* 135; *Tyson* v. *Woodruff*, 108 *Ga.* 368; *Thornton* v. *Lemon*, 114 *Ga.* 155. "Moreover, in order to render valid the compromise of a claim, it is not essential that the matter should be really in doubt. It is sufficient if the parties consider it so far doubtful as to make it the subject of a compromise." 6 Am. & Eng. Enc. L. (2d ed.) 713, and cases cited.

This contract settled the disputed question as to the right of the

42

Rome Street Railroad Company to construct and operate electric-railway lines across the three bridges without paying to the county compensation therefor, and established the right of the county to charge the amount agreed upon for such use of the bridges. Under this contract, the electric-railway lines were constructed and operated upon these bridges. When the City Electric Railway Company, the plaintiff in error, by purchase from previous purchasers of the same, acquired the property, rights, powers, and franchises of the Rome Street Railroad Company, it acquired no greater right in reference to the use of the bridges than that which was possessed by its predecessor, the last-mentioned company. After its purchase, it recognized the validity of the contract made with the county by the Rome Street Railroad Company, by paying the county for the use of the bridges, applying to the county authorities for a reduction in the amount of the annual charge, and entering into a new contract with the county, by which the original contract was so modified as to reduce the annual sum to be paid for the use of the three bridges from three hundred to two hundred dollars. The claim of the county which resulted in the judgment under consideration was based upon this new contract, which was but a modification of the old one, and which, for the reasons given above, was founded upon a valid consideration, and therefore enforceable against the City Electric Railway Company.

Certain affidavits were admitted in evidence, over the objection of the railway company that they were "irrelevant and immaterial, and upon the further ground that it was sought by said testimony to set up oral statements and negotiations that occurred prior to the execution of said alleged written contracts." These affidavits set forth the above-stated facts and circumstances leading up to the contract between the Rome Street Railroad Company and Floyd County, and also the circumstances under which this contract was modified by the one between the county and the City Electric Railway Company. In view of the ground upon which we have placed our decision in this case and the reasons which we have given therefor, it seems hardly necessary to say that, for the purposes indicated in the above discussion of the consideration for these contracts, this testimony was clearly admissible.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*