KIEFER OIL & GAS CO. v. McDOUGAL.

(Circuit Court of Appeals, Eighth Circuit. December 15, 1915. Rehearing Denied March 27, 1916.)

No. 4227.

1. COMPROMISE AND SETTLEMENT ☞8—BETWEEN PARTIES TO PENDING SUIT— VALIDITY AND ENFORCEMENT.

Complainant obtained an oil and gas lease on Indian land from the father and mother of the deceased allottee, claiming to be his sole heirs. Before the lease was recorded the lessors sold the land, and the purchaser executed a lease, afterward acquired by defendant, which went into possession, claiming priority, because its lessors obtained title before the recording and without knowledge of complainant's lease. One M. obtained a conveyance of the land from other relatives of the deceased allottee, and claimed adversely to both lessees. Complainant brought suit against all adverse claimants and obtained a receiver. Both complainant and defendant made offers to M., who leased to defendant for a royalty and an agreement to carry on the litigation and conditionally to pay a bonus. The court determined that the father was the sole heir, but that defendant's lease from his grantee was prior because of complainant's failure to record. Thereupon M. filed an ancillary bill to recover the royalty on oil sold by the receiver. Held, that the lease and contract were in effect a compromise and settlement between two of the three adverse claimants, that they were the consideration for the surrender by M. of his claim to the oil rights, and that he was entitled to his share of the fund in the hands of the receiver in accordance with their terms.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 17–31, 33; Dec. Dig. ☞8.]

2. COMPROMISE AND SETTLEMENT ☞8—VALIDITY—MISTAKE OF LAW.

An agreement of compromise and settlement is not invalidated because of a mistake of law by one of the parties.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 17–31, 33; Dec. Dig. ☞8.]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by Albert W. Shulthis against the Kiefer Oil & Gas Company and others, with ancillary bill by D. A. McDougal against said Oil & Gas Company. Decree for complainant, and defendant appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

N. A. Gibson and Franklin P. Schaffer, both of Muskogee, Okl., for appellant.

A. J. Biddison, of Tulsa, Okl. (Gray Carroll and Harry Campbell, both of Tulsa, Okl., on the brief), for appellee.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

SMITH, Circuit Judge. [1] George Franklin Berryhill was a part Creek Indian. He was married; his wife's name being Clementine Berryhill. She was not of Indian blood at all. They had a son, Andrew J. Berryhill, who was born prior to May 25, 1901, and died in November of the same year. By "An act to ratify and confirm a Supplemental Agreement with the Creek Tribe of Indians, and for other purposes," passed June 30, 1902 (32 Stat. 500), it was provided:

### "Rolls of Citizenship.

"7. All children born to those citizens who are entitled to enrollment as provided by the act of Congress approved March 1, 1901 (31 Stat. 861), subsequent to July 1, 1900, and up to and including May 25, 1901, and living upon the latter date, shall be placed on the rolls made by said commission. And if any such child has died since May 25, 1901, or may hereafter die before receiving his allotment of lands and distributive share of the funds of the tribe, the lands and moneys to which he would be entitled if living shall descend to his heirs as herein provided and be allotted and distributed to them accordingly."

It thus appears that Andrew J. Berryhill was never entitled to an allotment in his lifetime, but under the statute quoted an allotment was made to Andrew J. Berryhill, deceased. Among the lands thus allotted was the N. E. 1/4 of the N. W. 1/4 of section 18, township 17 N., range 12 E. of the Indian principal meridian. On October 10, 1904, the Principal Chief of the Creek Nation issued a deed or patent of said land to the heirs of Andrew J. Berryhill which was approved by the Secretary of the Interior on October 31, 1904. On March 24, 1906, George F. Berryhill and wife, reciting that they were father and mother and sole and only heirs at law of Andrew J. Berryhill, deceased, executed and acknowledged an oil and gas mining lease of the land above specifically described to Albert W. Shulthis for a period of 15 years. April 19, 1907, this lease was approved by the Secretary of the Interior. On June 5, 1906, George F. Berryhill and wife deeded the land to Edmond McKay and Perry McKay, again reciting in the instrument that the grantors were the sole and only heirs of said Andrew J. Berryhill. On October 12, 1906, the two McKays and their wives executed, and on the next day acknowledged, an oil and gas lease of the premises to Arthur B. Reese for 15 years. This lease, by various assignments, became the property of the Kiefer Oil & Gas Company. It entered upon the premises and bored a well for oil and gas, striking oil about the latter part of August, 1907. From the middle of August, 1907, on, seven uncles and aunts, and their wives and husbands, of Andrew J. Berryhill on his paternal side, conveyed the land in question to D. A. McDougal. On October 21, 1907, McDougal and wife executed an oil and gas lease to the Kiefer Oil & Gas Company, and the same day the parties to this lease signed a collateral contract.

About December 24, 1907, Mr. Shulthis brought this action in equity against D. A. McDougal, Edmond McKay, Perry McKay, and the Kiefer Oil & Gas Company, to determine the title to the oil and gas rights, to enjoin the defendants, for the appointment of a receiver, for a discovery, and for other relief. The defendants filed their joint and several answer. In this answer they deny that George Franklin Berryhill and wife were the owners in fee of the land in question, or any part thereof, at any time, and in answer to the prayer for a discovery the defendants answered that at the time of the deed from George Franklin Berryhill and wife to Edmond and Perry McKay they firmly and honestly believed that the devolution of the land in controversy was fixed and controlled by the Creek law of descent and distribution, and that they were advised and informed that the Creek law controlled the inheritance of the allotment of said Andrew J. Berryhill, and that under the Creek law the father, or the father and mother, inherited the fee-simple title in and to all the allotment of the said Andrew J. Berryhill, deceased, and defendants aver and plead that the defendants Edmond and Perry McKay, acting and relying upon their advice and belief that the Creek law controlled, purchased as they thought the fee-simple title in and to said land from George Franklin Berryhill and Clementine Berryhill, and they allege substantially the same facts with reference to the taking of a lease by Arthur B. Reese, but that defendants are now advised, and therefore aver and plead, that the devolution of the allotment of Andrew J. Berryhill, deceased, was fixed and controlled by chapter 49 of Mansfield's Digest of the Laws of the State of Arkansas. They then alleged that the uncles and aunts of said Andrew J. Berryhill claimed to have inherited the fee to the land in controversy subject to a life estate of the father; that D. A. McDougal had purchased from all of the uncles and aunts and collateral kindred of said Andrew J. Berryhill all their right, title, and interest in and to the land in controversy for a valuable consideration.

"In further response to complainant's prayer for discovery, and as a muniment of title in the defendant Kiefer Oil & Gas Company to the oil and gas rights to the land in controversy, defendants state that on October 21, 1907, defendant D. A. McDougal, with his wife, Myrtle A. McDougal, joining therein, entered into a lease contract with the defendant Kiefer Oil & Gas Company, whereby said D. A. McDougal, for a valuable consideration, and a one-fifth part of all oil produced and saved from the premises by said Kiefer Oil & Gas Company, its successors and assigns, did grant, demise, lease, and let unto said Kiefer Oil & Gas Company, its successor and assigns, for the sole and only purpose of mining and operating for oil and gas, the said N. E. ¼ of the N. W. ¼ of section 18, township 17 N., range 12 E., containing 40 acres, being the land in controversy, for and during the term of 15 years from and after October 12, 1906, and so long after the expiration of the 15 years as oil or gas, or either of them, is produced from the land by defendant Kiefer Oil & Gas Company, its successors or assigns, in paying quantities."

In the same document the defendants aver and plead that the Kiefer Oil & Gas Company is rightfully and lawfully entitled to operate the land in controversy for oil and gas purposes and extract said minerals therefrom under and by virtue of the McKay lease, "in connection and conjunction with the lease contract executed to it, Kiefer Oil & Gas Company, by D. A. McDougal and wife, on October 21, 1907, and

accepted by said Kiefer Oil & Gas Company on October 26, 1907." In the same instrument—

"defendants further aver and plead that, if they be mistaken as to the quantum of title taken by George Franklin Berryhill, or George Franklin Berryhill and wife, Clementine Berryhill, and it should be held and decided by the court that George Franklin Berryhill, or George Franklin Berryhill and wife, Clementine Berryhill, was or were vested with the fee-simple title in and to the land in controversy under the laws of descent and distribution in force at the time, then defendants rely upon their superior rights to the oil and gas in the land in controversy under the deed from George Franklin Berryhill and Clementine Berryhill to Edmond and Perry McKay, heretofore set up, and the lease made by them to Arthur B. Reese on October 12, 1906, now owned by Kiefer Oil & Gas Company."

On March 4, 1908, George Franklin Berryhill with leave of court filed a bill of intervention, in which he claimed that the complainant's lease was valid and that the deed to the McKays was invalid, because he was then under restrictions, and asked that the title be quieted to the land and for other relief. To this bill of intervention the Kiefer Oil & Gas Company and D. A. McDougal made an answer in which they said:

"Defendants aver and plead that the uncles and aunts and grandmother of Andrew J. Berryhill, from the father's side, took the entire title to said land, and that the title in fee is now in defendant D. A. McDougal, under and by virtue of deeds executed to him by the uncles and aunts of Andrew J. Berryhill, deceased, to wit, the brothers and sisters of intervener, George Franklin Berryhill, named and specified in the answer of defendants and in the intervening petition of intervener, and in addition thereto defendant D. A. McDougal is the owner and holder of whatever right, title, and interest the grandmother, Airy Anne Berryhill, acquired in said land by virtue of the deed executed and delivered by her to said D. A. McDougal on October 18, 1907."

The case was tried in the District Court, and resulted in a finding and decree that George Franklin Berryhill took a life estate only in the lands in question, and the uncles and aunts of Berryhill took the remainder; that George Franklin Berryhill was under no restrictions as to conveying his life estate, but that as a tenant for life could not grant the right to mine for oil and gas, and dismissed the bill and the petition of intervention. Shulthis v. MacDougal, 162 Fed. 331. This case was appealed to this court, where it was held that George Franklin Berryhill took the land in fee, and therefore had the right to grant an oil and gas lease thereto, but that the complainant, having failed to record his lease until May 18, 1907, and long after the deed to the McKays, the complainant's lease was of no validity as against the McKays and their grantees, who took their interest for a valuable consideration and without actual or constructive notice. Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615.

It will be observed that, while there was a difference of opinion between the District Court and this court as to the law applicable to this case, there was no difference in the result reached, and the case was accordingly affirmed. Shulthis and Berryhill attempted to appeal from the decree of this court to the Supreme Court, but their appeals were on motion of the original defendants dismissed. Shulthis v. McDougal, 225 U. S. 561, 32 Sup. Ct. 704, 56 L. Ed. 1205. The opinion of this court was, however, in part sustained by the subse-

quent case of Skelton v. Dill, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. 198, and more fully in McDougal v. McKay, 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001.

The lease from McDougal to the Kiefer Oil & Gas Company, and accompanying contract, provided that the Kiefer Oil & Gas Company would pay to McDougal $5,000 and one-fifth of all oil produced, or its equivalent in money, and certain other stipulated sums. A receiver had collected, after deducting his expense of operating and developing the property, $169,480.97. After this court had affirmed the action of the District Court, Mr. McDougal filed his ancillary bill against the Kiefer Oil & Gas Company, asking that the receiver pay to him $41,913.44 out of the funds collected by him. On June 21, 1913, the Kiefer Oil & Gas Company filed its amended answer to said ancillary bill and its cross-bill. In the latter it sought an injunction and cancellation of the lease and contract with McDougal. On July 2, 1913, Mr. McDougal moved to strike the cross-bill. The case was tried November 25, 1913, and the court ordered the money in the hands of the receiver turned over to McDougal and made the following order:

"This cause came on to be further heard at this time, and was argued by counsel upon the motion of D. A. McDougal to strike the cross-bill heretofore filed herein by the Kiefer Oil & Gas Company; and it is by the court considered, ordered, adjudged, and decreed that said motion be and is hereby sustained, and that said cross-bill be and the same hereby is stricken, to which order and decree of the court the said Kiefer Oil & Gas Company except."

And:

"Provided, however, that this order and decree does not adjudicate or determine the rights of the said D. A. McDougal or of the said Kiefer Oil & Gas Company as to any other things or matters than the aforesaid sum now in the custody and control of this court, nor does it determine the rights of either of said parties in or to the premises described in said ancillary bill, nor to the rents, issues or profits thereof that may have accrued or may hereafter accrue, subsequent to the restoration of said premises to the said Kiefer Oil & Gas Company, under the decree of this court herein entered on the 19th day of July, 1912, nor in or to the $5,000 promissory note described in said ancillary bill."

And the Kiefer Oil & Gas Company appeals.

There was neither in the lease nor the supplemental contract any warranty of title in McDougal. At the outset it appears that there were, shortly prior to the commencement of this suit, three conflicting claims to the oil and gas upon the land in question:

First. The claim of Shulthis under the lease from Berryhill, which is conceded was first in time of origin.

Second. The claim of the Kiefer Oil & Gas Company from the McKays, which the Oil & Gas Company claimed was superior to the Shulthis lease, because the latter was not recorded, and they claim that Reese and his grantees had no notice of it, actual or constructive. The last question was far from being a clear one. See Shulthis v. McDougal, 170 Fed. 529, 538, 95 C. C. A. 615. But if Berryhill only had a life estate then his lease to complainant, without the remainderman similarly leasing, was not valid. Marshall v. Mellon, 179 Pa. 371, 36 Atl. 207, 35 L. R. A. 816, 57 Am. St. Rep. 601; Gerkins v.

Kentucky Salt Co., 100 Ky. 734, 39 S. W. 444, 66 Am. St. Rep. 370; Hook v. Garfield Construction Co., 112 Iowa, 210, 83 N. W. 963; Thornton on Oil and Gas (2d Ed.) § 815; 16 Cyc. 625. If, therefore, it was held that the Kiefer Oil & Gas Company was entitled to the land as against Shulthis, but that Berryhill only held a life estate, its rights were subject to extensive litigation under the next claim.

Third. McDougal had title from all the supposed remaindermen. McDougal had received an offer from Shulthis of $25,000 bonus and one-eighth of the oil and gas. McDougal asked $40,000 bonus. Then negotiations commenced with the Kiefer Oil & Gas Company, at its instance, as testified to by Mr. McDougal. His claims were adverse to those of Shulthis and the Kiefer Oil & Gas Company. The latter had at considerable expense sunk a well, and knew it had struck oil, and had every incentive to want to hold its previously assumed rights. To show that the question involved was doubtful only needs that it be recalled that the learned District Judge, upon reiterated pleading of the McDougal claim by the Kiefer Oil & Gas Company, decided the question practically upon and in favor of his rights. Under these circumstances after prolonged negotiations the two claimants, the Kiefer Oil & Gas Company and McDougal, compromised their claims, and McDougal took a $5,000 bonus after he had been offered $25,000 by Shulthis and increased his royalty. He agreed in the supplemental contract which was made at the time of the lease:

"The Kiefer Oil & Gas Company agrees and binds itself to faithfully and diligently prosecute the pending suit with Albert W. Shulthis over the oil and gas mining rights to the said land, and to take, perfect, and prosecute appeals to the higher courts from any and all judgments, orders, and decrees adverse to it in said litigation with Albert W. Shulthis."

In addition in the same contract it is stipulated:

"Said D. A. McDougal waives any and all claims to improvements placed on said land, and agrees that Kiefer Oil & Gas Company may remove them at the expiration of this lease, and may remove them, should Albert W. Shulthis win his said suit in the end."

Thus the Kiefer Oil & Gas Company was in full charge of all litigation. It secured a written stipulation that the $5,000 bonus should not be in fact turned over to McDougal unless it finally won its suit with Shulthis. There is present every evidence that, the three parties all claiming the right, McDougal and the Kiefer Oil & Gas Company decided to compromise their contention, and this lease was made as a part of the compromise.

"The prevention of litigation is a valid and sufficient consideration; for the law favors the settlement of disputes. * * * On the same ground a mutual compromise is sustained. With the courts of this country, the prevention of litigation is not only a sufficient, but a highly favored, consideration, and no investigation into the character or value of the different claims submitted will be entered into for the purpose of setting aside a compromise; it being sufficient if the parties entering into the compromise thought at the time that there was a question between them. So giving up a suit, or any equivalent proceedings, instituted to try a question of which the legal result is doubtful, is a good consideration for a promise to pay a sum of money for an abandonment thereof. And in these cases inequality of consideration does not constitute a valid objection; it is enough if there be an actual controversy, of

which the issue may fairly be considered by both parties as doubtful." Parsons on Contracts (9th Ed.) 477.

This doctrine is abundantly sustained, not only by the authorities there cited, but by Hager v. Thompson, 1 Black, 80, 17 L. Ed. 41; Hennessy v. Bacon et al., 137 U. S. 78, 11 Sup. Ct. 17, 34 L. Ed. 605; Railway v. Clark, 178 U. S. 353, 20 Sup. Ct. 924, 44 L. Ed. 1099; Williams v. Bank, 216 U. S. 582, 30 Sup. Ct. 441, 54 L. Ed. 625; Coffee v. Emigh, 15 Colo. 184, 25 Pac. 83, 10 L. R. A. 125; Wells v. Neff, 14 Or. 66, 12 Pac. 84, 88; Smith v. Farra, 21 Or. 395, 28 Pac. 241, 20 L. R. A. 115; Cassell v. Ross, 33 Ill. 244, 85 Am. Dec. 270; Rowe v. Barnes, 101 Iowa, 302, 70 N. W. 197; Hall v. Wheeler, 37 Minn. 522, 35 N. W. 377; Tessendorf v. Lasater, 10 Kan. App. 19, 61 Pac. 677; Sango v. Parks (Okl.) 143 Pac. 1158; Tyson v. Woodruff, 108 Ga. 368, 33 S. E. 981; Pomeroy's Equity Jurisprudence, § 850; 5 Ruling Case Law, 882, 883. And the doctrine has been sustained by this court. Daly v. Busk Tunnel Railway Co., 129 Fed. 513, 64 C. C. A. 87; Sovereign Camp v. Bridges, 165 Fed. 342, 91 C. C. A. 328.

[2] And it is held quite uniformly that, where the parties are mistaken as to the law, they are nevertheless bound by a contract of compromise. Prout v. Pittsfield Fire District, 154 Mass. 450, 28 N. E. 679; Fidelity & Casualty Co. v. Gillette Herzog Co., 92 Minn. 274, 99 N. W. 1123; City Electric Railway Co. v. Floyd County, 115 Ga. 655, 42 S. E. 45; Lewis v. Cooper, Cooke (Tenn.) 467; Connor v. Ethridge, 3 Neb. (Unof.) 555, 92 N. W. 135; 5 Ruling Case Law, 898.

There is no question of fraudulent representation of the facts. Both parties understood the elementary facts fully, but it is claimed that, as they did not understand the law as it was ultimately determined to be, this led to a mutual mistake as to the ultimate fact of ownership; but this was one of the very matters in dispute at the negotiations. The representative of the Oil & Gas Company claimed at that time that they had a good title, and Mr. McDougal in substance said the courts must determine that. Then they compromised, and Mr. McDougal surrendered $20,000 of his bonus offered him by Shulthis and agreed to lose the remaining $5,000 if the Kiefer Oil & Gas Company did not win its suit with Shulthis for an increased royalty, and agreed to turn the management of the litigation over to the Kiefer Oil & Gas Company. They took charge of the litigation and stood upon their rights under the lease and contract with McDougal as a defense, won their suit substantially on these alleged rights in the District Court, and now want to repudiate the contract because they ultimately won their case on other grounds in this court. This, under the facts shown here, they cannot do. The District Court was right in ordering that the sum in the hands of the receiver of $41,-913.44 be paid to Mr. McDougal.

The decree of the district court is affirmed.