## GEM OIL CO. et al. v. SWIFT et al.

No. 11920—Opinion Filed Feb. 19, 1924.

Rehearing Denied May 27, 1924.

(Syllabus.)

**Oil and Gas—Assignment of Lease—Liability for Rents and Royalties — Assignee's Right to Dispute Lessor's Title.**

Where a party purchases an assignment of an oil and gas lease, and said assignment contains the express stipulation that the assignee will not elect to hold possession under said lease nor be obligated to pay the rentals and royalties due under said lease, unless the title is valid and subsisting, held, the assignee is not estopped from denying the title of the lessor, and if the lessor's title fails, the action of the lessor against the assignee for rents and royalties likewise fails.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by George M. Swift and L. O. Lytle against the Gem Oil Company and Charles Page. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with instructions.

Ellinghausen & Ellinghausen and Stuart, Sharp & Cruce, for plaintiffs in error.

Hughes & Foster and McDougal, Lytle, Allen & Pryor, for defendants in error.

McNEILL, J. This action was commenced by George M. Swift and L. O. Lytle against the Gem Oil Company and Charles Page to recover certain royalties alleged to be due under an oil and gas lease.

The material facts as admitted, or offered to be proven, may be stated as follows: Tommy Atkins was allotted the land where the oil is produced, and on his death the same was inherited by Minnie Atkins. Charles Page and the Gem Oil Company developed the land under an oil lease executed by Minnie Atkins and others, and first produced oil about July, 1914. The U. S. Government had brought suit to cancel the allotment of Tommy Atkins, claiming he was a myth, and also to cancel the lease to Page and others. That suit was decided in favor of Page et al., and Minnie Atkins was decreed to be the owner of the land. Harvey Harrison, a son of Minnie Atkins and a half-brother of Tommy Atkins, claiming some interest in the land, on the 21st day of February, 1914, executed and delivered to S. D. Shirk an oil and gas mining lease on said land, reserving to himself as royalty a one-eighth of the oil, and providing if no well was drilled within one year, to pay $150 in advance for each year said drilling was delayed. Neither Shirk nor Harvey Harrison was ever in possession of the land. On the 21st day of November, 1914, S. D. Shirk assigned the oil and gas lease executed by Harvey Harrison to the Gem Oil Company, which lease was thereafter assigned to Charles Page. Said assignment provided the assignee should pay the royalties, and then contained the following provision:

"It is agreed that the foregoing assignment is accepted with the understanding that such acceptance shall not be deemed as an election to hold under the title here conveyed and the provisions relating to royalty shall not be an obligation, unless the title of the lessee shall be determined to be valid and subsisting."

Thereafter, on the 7th day of August, 1916, Harvey Harrison assigned all his oil and gas rights in the land to George M. Swift, and on the 1st day of September, 1916, Swift assigned one-half interest in the same to L. O. Lytle. Neither Page nor the Gem Oil Company ever attorned to Harrison or his assigns for any rent or royalties. Lytle and Swift commenced this action in September, 1916, to recover one-eighth of all oil produced.

It is conceded that Harrison never inherited any interest in the land and never had any title to the land, but it was and is contended that Harrison having executed the oil and gas lease to Shirk, and Shirk having assigned to Gem Oil Company, and the Gem Oil Company having assigned to Page, the assignees are liable to the lessor for the royalties and rentals due under said lease, and are estopped from disputing the landlord's title. Judgment was rendered for the plaintiffs in the lower court and against the defendants, and from said judgment the defendants have appealed.

It is conceded by the defendants, plaintiffs in error herein, if the assignment to the Gem Oil Company, which was transferred to Page, was accepted without limitation, and the assignees entered into possession under said lease and operated the premises, they would be liable for the royalty, following the rule announced in the case of Campbell v. Short, 65 Okla. 312, 166 Pac. 438, and numerous other decisions. But plaintiffs in error contend by reason of the assignment containing the express provision that the assignee did not elect to hold possession under the lease executed to Shirk, and further provided that the obligations to pay royalties was dependent upon the title, the assignees were not liable for the royalties, because the title failed, nor are they estopped from denying the landlord's title. They also contended they had a right to contract with Shirk for an assignment with such limitations and under such terms and conditions as they could agree upon, and the assignment having provided the terms and conditions upon which the assignment was accepted, and upon which the plaintiffs in error agreed to pay royalty, their liability to Shirk and the lessor is controlled by the conditions expressed and contained in said assignment.

The defendants in error state their proposition as follows, as between the lessor and lessee or his assignee:

"The liability of the lessee rests in privity of contract, while the liability of the assignee rests in privity of estate, and it shall be our contention through this brief that the liability of the assignee resting in privity of estate with the lessor is in no wise controlled by any condition expressed in the contract of assignment to which the lessor was not a party, or to which he has not assented."

The difference between the two theories of the parties may be stated as follows:

The plaintiffs in error contend they have a right to purchase the assignment subject to such limitations as agreed to between themselves and the lessee.

The defendants in error take the position they are not bound by the limitations in the assignment, for the reason they were not parties to the same.

An examination of the cases cited and relied upon by both parties are distinguishable from the facts in the instant case, for in no case cited did the assignment contain limitations similar to the one under consideration. The defendants in error cite Edmonds v. Mounsey (Ind.) 44 N. E. 196, and Fennell v. Guffey (Pa.) Atl. 785. In both of those cases the landowner executed an oil and gas lease, providing the lessee should drill a well within a certain time or pay certain rentals. The lessee assigned the lease without limitations and the delay money was not paid. No well was drilled, nor was the lease surrendered, and the landlord brought suit against the assignee for the rentals due under the lease. The assignee defended on the theory that he had never taken possession under the lease, and therefore was not liable for the rentals. The court held the assignee liable. The rule announced in the above cases is that announced in Tiffany on Real Property, vol. 2, page 1488:

"That the lessee, without being prevented from taking possession, fails to take possession, is obviously no defense to a claim for rent. One cannot thus rid himself of an obligation assumed by him, merely because he finds it convenient to withdraw from his bargain."

The same rule would be applicable to the assignee. The assignment under consideration in the above cases contained no limitations, and the force and effect of limitations contained in an assignment was not involved in the case, nor decided therefore the case gives us little aid in determining the liabilites of the assignee where the assignment contains limitations. The cases of Bonetti v. Treat (Cal.) 27 Pac. 612, Campbell v. Short, 65 Okla. 312, 166 Pac. 438, and Stewart v. Long Island R. R. Co., 120 N. Y. Supp. 601, 55 Am. Rep. 894, are also cited. These cases are likewise distinguishable for the reason the assignment contains no limitations, and it was conceded the assignee entered in possession under the assignment.

The case of Freeman v. New Jersey Portland Cement Co., 207 Fed. 690, is also cited. In that case the lease provided that the lessee should not be permitted to remove the property placed on the leased premises until the royalty and taxes were paid. The lessee assigned the lease, the lessee went into possession, and operated the property and was in arrears for the rents, and the lessors brought suit against the assignee to recover $4,000 rentals and royalties due, and to enjoin the removal of the property placed upon the lease in violation of the express terms of the lease. A temporary injunction was granted, and an appeal was taken from the order granting the temporary injunction and was sustained. That case is easily distinguishable, for the reason the assignee went into possession and developed under the lease. The assignee contended that in accepting the assignment it was agreed he was not to be bound by the covenants in the lease. The question of whether the assignee would be liable for the royalties if he had covenanted not to pay the same was not decided. The only question was the right of the landlord to his lien under the terms of the lease. The above case is similar in principle to a landlord and subtenant.

This court has held in numerous cases that the landlord has a lien upon the crops of a sublessee grown upon the premises, and has also held in the case of Kimbriel v. Montgomery, 28 Okla. 743, 115 Pac. 1013, that the lessor cannot sue a sublessee upon the lessee's covenant to pay rent. In the above case the principal question involved was the question of landlord's lien. The case of Kiefer O. & G. Co. v. McDougal, 229 Fed. 933, is also cited. We think that case had no application to the case at bar, as the court in that case held the lessee's covenant to pay the royalties was a covenant under the express terms of the lease. In none of the cases above cited is the question discussed as to the force and effect of an assignment which contains the limitations that the assignee will not elect to hold under the lease or obligate himself to pay the rents or royalties unless the title is valid and subsisting.

The plaintiffs in error, to support their contention, cite Tiffany on Landlord and Tenant, page 443, which reads as follows:

"The inability of the lessee or his assignee to assert the lessor's lack of title is, it is conceived, entirely independent of the doctrine of estoppel, and is the result merely of the fact that the stipulation for the payment of rent is absolute in terms and contains no exception in his favor in case the lessor's title is defective. If it did contain such an exception, he would, it can hardly be doubted, have a right to assert this in defense to rent, a consideration which tends strongly to support the view that his

preclusion otherwise to assert it is the result of the stipulation into which he has entered and not of the doctrine of estoppel."

The above quotation supports the proposition of law that if the assignment contains an exception that the assignee would not be obligated to pay rent if the landlord's title is defective, the exception would control, and the assignee would not be estopped from denying the landlord's title, and may prove that as a defense. The author, to support this proposition, cites Woods v. Chambers (S. C.) 3 Richards, 150. In that case the tenant pleaded the landlord declared he would not claim rent to the premises if the title of the premises was in another. The court held that was a good defense. The case of City of Philadelphia v. Bridge Co., 4 Binney (Pa.) 283, is also cited. This was an ejectment action. The court held that the lessee by virtue of a contract and agreement with the landlord might show he had a better right to the lot than the lessor.

The case of Frye v. Gragg, 33 Me. 29, is also cited. The court in the 5th paragraph of the syllabus stated as follows:

"The title of a lot of land was disputed. One of the claimants permitted a third person to occupy, upon a stipulation that if his title should prove to be good he would sell it to such occupant, but no price was agreed; held, that the occupant was not estopped to deny the title of such claimant."

The defendants in error contend the above cases are distinguishable from the case at bar because in the above entitled cases the lessor was a party to the agreement that no rent should be paid unless the lessor had title, while in the case at bar the lessor was not a party to the agreement. The cases are subject to this distinction. The above cases cited are of very little assistance in determining the force and effect of the stipulation in the assignment that the assignee in accepting the assignment elects not to hold under said lease, and will not be obligated to pay the royalties unless the title is valid and subsisting. We have been unable to find any case exactly in point. The case of Trask v. Graham (Minn.) 50 N. W. 917, supports the rule announced in Tiffany on Landlord and Tenant above set out. The first paragraph of the syllabus is as follows:

"Covenants in a lease to pay rent and taxes upon the demised premises run with the land, and an assignee of a lease is in privity of estate with the lessor, and, by accepting possession under an assignment, in the absence of stipulations to the contrary, assumes the liability for obligations maturing by virtue of such covenants while he holds the estate."

This case reflects the opinion that the assignee may stipulate that he shall not be liable on the covenants to pay rent, but an examination of the case discloses the assignment contained no such stipulations.

In the case of Walker et al. v. Dohan (La.) 2 South. 381, in the body of the opinion, the court stated as follows:

"The only point of difference was whether the sale of the unexpired term of a lease eo nomine, without expressed limitation, involved the transfer of the obligations with the rights, or of the latter alone. Mr. Hennen, the author of the Digest, and one of the most acute legal minds of his day, in his note on, these decisions, anticipated the very question which is now presented, saying: 'What forbids the severance of a right from its correlative obligation, and the transfer of the one without the other? The lessee's right is to occupy the premises; his obligation, to pay the rent. Can he not make a sale or donation of the right, retaining himself the obligation to pay the rent? It is true that the nonfulfillment might defeat the enjoyment of his vendee of the right transferred. But the transfer and severance could be none the less possible and legal. * * * The lessor's rights are not thereby affected.' "

The above case involved the sale of a lease at judicial sale. The court held that the lease contained two conditions: First, the right to occupy the premises. Second, his obligation to pay rent; and the lessee might sell, and the assignee might purchase the right to occupy the premises and not obligate himself to pay the rent. It is stated that if the assignee failed to obligate himself to pay the rent, or failed to pay the same, and if the lessee failed to pay, the right of possession of the assignee might be defeated by the landlord. The principle appears to be similar to the case at bar. The assignment under consideration stipulated that the assignee would not hold possession under the lease and would not be obliged to pay the rentals unless the title was valid.

In the case of Hamilton v. House (Ala.) 60 South. 429, in the opinion it is stated:

"Under the evidence in the case the defendant cannot be held liable as the assignee of that contract, as the evidence, without conflict, showed that he never agreed to be bound by its terms. On the contrary, he expressly refused to agree to pay the amount of rent which Scott had by that contract promised to pay. For one to become liable as the assignee of another's contract it is essential that he accept or assent to an assignment of it to himself."

In the case of Fell v. Betz & Son, 5 Pa. Dist. Rep. 310, suit was brought by the lessor against the assignee, and the assignee set up as a defense that he had entered into an agreement with the lessor that he was to have the right to occupy the premises in case the lessee vacated the same, and that he never exercised said option. The court held the answer stated a defense.

In the case of Wiggins Ferry Co. v. Ohio & M. R. Co., 142 U. S. 396, 12 Sup. Ct. Rep. 188, 35 L. Ed. 1055, the court in the first syllabus paragraph stated as follows:

"The relation of the landlord and tenant will never be implied when the acts and conduct of the parties are inconsistent with its existence."

In the body of the opinion, the court stated as follows:

"Such relationship will never be implied when the acts and conduct of the parties are inconsistent with its existence. In Carpenter v. United States, 84 U. S. (17 Wall.) 489, 493 21 L. Ed. 680, it was held by this court that no reason for the implication of a tenancy existed, 'when an express contract or an arrangement between the parties shows that it was not intended by them to constitute the relation of landlord and tenant, but that the occupation was taken and held for another purpose.'"

In the case of Comley v. Ford (W. Va.) 64 S. E. 447, it is said:

"To constitute privity of estate the assignee must acquire the legal title or take possession of the premises."

In the body of the opinion it is said:

"That there can be no recovery from the assignee of the lessee until either privity of contract or privity of estate is established on the part of the assignee is uniformly asserted by the authorities. * * * If there were an express covenant on the part of the assignee to pay the rent, there would be privity of contract."

Again, it is further said:

"If the assignment is valid and complete, passing the legal title to the lease, the assignee is liable by reason of his succession, whether he enters into possession or not."

Again, it is said:

"If the intention or contract between him and the lessee was that he should take the whole interest in the lease, and he has taken possession under such a contract, he becomes a tenant of the lessor and is liable for the rent, whether the legal title be vested in him or not; possession alone being regarded as title sufficient to impose liability for the rent."

While the above cases are not exactly in point, they reflect the principle of law that the lessee and his assignee may make such contract and agreement as they can agree upon, subject, however, to the limitations that the possession or right of possession of the assignee may be defeated by the lessor if the covenants of the lease are not complied with. In the case of Comley v. Ford, supra, it is also said:

"If a lessee contracts to sell his lease, and another party contracts to purchase it of him, it would be contrary to the established principles of a court, either of law or equity, to say that thereupon any right or equity arose to the landlord either to compel the purchaser to take an assignment of the lease, or to compel the seller to assign it. No such case ever arose; for no equity could arise to the landlord to interfere in consequence of such a contract between the lessee and the intended assignee."

In Annotated Cases, 1916 E, beginning with page 789, we find the general principle of law announced, relating to the rights between the lessor and lessee, the lessor and assignee, and the lessee and assignee; and also in the annotation in 52 L. R. A. (N. S.) 980, in the note, the same principles are annotated. In none of those cases, however, is a case cited exactly in point with the one at bar, nor is the exact principle discussed, but from a consideration of the general proposition stated in the note and the decisions heretofore referred to, we think the following conclusions may be drawn therefrom:

First. As between the landlord and lessee, if the lessee enters possession of the premises, he is liable to the landlord for rent both upon privity of contract and privity of estate.

Second. If the lessee fails and refuses to take possession, he is liable to the landlord upon privity of contract and cannot defeat the payment of rent upon his refusal to take possession.

Third. The lessee cannot defeat his right to pay rent or to comply with the covenants in the case by assigning the lease.

Fourth. An assignment of a lease without limitations creates a privity of estate between the lessor and assignee, rendering the assignee liable to the lessor for rents accruing subsequent to the assignment and during his ownership of the contract.

Fifth. An assignee of a lease may relieve himself from subsequent liability to the lessor by transferring the lease and thereby terminating the privity of estate.

Sixth. As between the lessor and sublessee there is neither privity of estate nor privity of contract.

In regard to an assignment, in 4 Cyc. 29, it is said:

"An assignment being a contract, there must, of course, be two parties—one, called the assignor, giving, and the other, called the assignee, taking the assignment."

It is further stated:

"It may be stated as a general proposition that, in order to render an assignment effective, it must be communicated to the assignee, and his acceptance or assent thereto be given."

If an assignment is a contract between two parties, to wit, in a case of a lease, the lessee and the assignee, the lessor is not a necessary party to said transaction. The lessor does not release the lessee from the covenants of the lease by the lessee assigning the lease, nor are the lessor's rights prejudiced thereby, and we are unable to ascertain in what way he would be interested in the terms of the assignment, because he looks to the lessee to comply with the terms of his lease contract, and if the covenants are not complied with, he may defeat any right the assignee acquires by reason of the assignment. The lessee could not compel the assignee to pay rent which he had contracted not to pay. If the assignee accepts an assignment with the express stipulation that he will not be obligated to pay rent, can the lessor compel him to pay that which he has contracted he would not pay? We think not.

In none of the cases cited has there been an intimation or inference that the lessee could not make an assignment under such terms and stipulations as might be agreed upon between himself and assignee, but, to the contrary, several cases announce the rule that the assignee may purchase an assignment with such limitations as may be agreed upon between himself and the lessee. If the assignment contains limitations that he shall not be bound by the covenants of the lease to pay rent, the landlord or lessor cannot maintain an action to require him to pay that which he expressly contracted that he would not pay; however, any rights he has are subject to be defeated by failure of the lessee to comply with the covenants of the lease. The lessor may still maintain an action against the lessee for the rents, and he may also evict the assignee if the covenants of the lease are not complied with. The cases are almost uniform in holding that an assignee who holds under an assignment without limitations may terminate his liabilty to the lessor for subsequent covenants in the lease by transferring the lease. The lessee cannot do this.

We, therefore, conclude that where a party purchases an assignment of an oil and gas lease, and said assignment contains the express stipulation that the assignee will not elect to hold possession under said lease nor be obligated to pay the rentals and royalties due under said lease unless the title is valid and subsisting, the assignee is not estopped from denying the title of the landlord, and if the landlord's title fails, the action of the landlord against the assignee for rents and royalties likewise fails. It therefore follows that the judgment against the Gem Oil Company for rents and royalties after the 21st of November, 1914, cannot be supported upon any theory. It also follows that the assignment to the Gem Oil Company and Page, having contained the express stipulation that the assignees would not hold possession under a lease nor be obligated to pay the rentals and royalties due under the lease unless the title is valid and subsisting, is a valid contract between assignees and the lessee, and is a complete defense to a suit by the landlord against the assignees for rents and royalties, where it is admitted the landlord's title is not valid and subsisting.

Having reached this conclusion, it therefore follows that the trial court erred in refusing to permit the introduction of certain testimony along this line, and in its instructions to the jury, and for said reason the judgment is reversed, and the cause remanded, with instructions to the trial court to take such further proceedings not inconsistent with the views herein expressed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.