15339.  VANN, receiver, *v.* KIMBREL.

1. Where cotton pledged to secure a debt was converted by the pledgee, his subsequent agreement with the pledgor, liquidating the amount which should be credited upon the debt as the value thereof, a part being credited at the time and the balance to be credited as soon as the pledgee received "account sales," was not wanting in consideration; and where the pledgee refused to account to the pledgor for such remainder according to the agreement, the latter could maintain an action for its recovery.
2. Where, after crediting a part of the proceeds of the cotton under such an agreement as stated above, the pledgee refused to credit the remainder, the right of the pledgor to enforce compliance with the agreement as to the remainder was not waived by the mere fact that from time to time he made partial payments upon and gave renewal notes for the respective balances of the debt to secure which the cotton was pledged, and finally paid it in full.
3. The measure of the liability was the amount which, according to the agreement, the pledgee should have credited but refused to credit, with interest thereon from the time the credit should have been made.

DECIDED APRIL 25, 1924.

Complaint; from city court of Miller county—Judge Geer. December 12, 1923.

*T. S. Hawes, N. L. Stapleton,* for plaintiff in error.
*P. D. Rich,* contra.

BELL, J. This was an action by G. J. Kimbrel against First National Bank of Colquitt. After the suit was filed the bank was placed in the hands of a receiver, and the receiver was made a party defendant in its stead. The case was tried upon an agreed statement of facts. It appears therefrom that in the fall of 1920 Kimbrel was indebted to the bank in the sum of $4,333.09. The debt was evidenced by notes. The bank desiring security, the plaintiff pledged twenty-nine bales of cotton. Nine bales were destroyed by fire, but, these having been settled for, the dispute between the parties relates only to the remaining twenty bales. In October, 1921, the bank through its proper officers stated to the plaintiff that his cotton had been shipped and ordered sold, but that "account sales" had not yet been received; that the bank would at that time credit Kimbrel with ten cents per pound on the cotton, amounting to $1,035.03, and would give an additional credit of ten cents per pound as soon as it got returns. "Acting on this statement Kimbrel effected the settlement with the said Watson as an officer of the bank, and gave to the said bank two new notes, one for $2,000 and one for $817.26. This amount represented the amount due by G. J. Kimbrel to the bank after deducting from the principal and interest originally due the value of the nine bales of cotton and also the $1,035.03 credited on the twenty bales of cotton." Shortly thereafter the bank closed, but it was reopened on December 1st of the same year. A different person was then elected as its executive, and he notified Kimbrel "to come in to the bank and make some arrangements relative to the two notes last described above." Kimbrel responded and notified the new officer of the agreement and understanding which he had with the bank through its former officer, stating that he was willing to pay in cash an amount sufficient to bring the notes "down to about the amount that would be due on said cotton at ten cents per pound. The bank would not agree to this proposition, stating that they did not feel that the bank was responsible for it." Kimbrel then made a partial payment, gave another note for the remainder, later made another payment, and renewed the balance, which he finally paid in full. The notes respectively were delivered to Kimbrel as they were renewed or paid. When Kimbrel was informed that the bank would not recognize the agree-

ment he had with its prior officer he stated to the officer with whom he was then dealing that he "would sue the bank for the ten cents per pound," and he received the reply that "it was a matter that ought to be thrashed out in court," and that he could take such steps as he saw fit:

It is stipulated further that the weight of the twenty bales was 9,989 pounds; that for thirteen bales the bank received only $68.76 net above the 10 cents per pound which had been credited. The remaining seven bales sold at 16 13/16 cents per pound. The action was to recover the amount of 10 cents per pound for the cotton as the promised but refused additional credit. It was agreed that if the plaintiff was entitled to recover, he should recover the principal sum of $998.90, with interest thereon from October 1, 1921. The court directed a verdict for the plaintiff, and the receiver excepted.

The attorneys for the plaintiff in error in their brief make but three contentions, namely: (1) that the bank is not liable on the agreement made by its former president to pay an additional ten cents per pound on the cotton, for the reason that there was absolutely no consideration for any such agreement; (2) that, regardless of any agreements made by the bank's former president, or any rights that were vested in Kimbrel by virtue of such agreements, all of these rights were waived by Kimbrel when he gave the renewal notes; (3) that the bank, if liable for any amount on this cotton, was not liable for more than the cotton actually brought.

1. It is pointed out by the plaintiff in error that the cotton had already been sold at the time of the making of the agreement on which the plaintiff relies, and that it brought less than twenty cents per pound, the value which he claimed and the balance of which the verdict awarded to him. The Civil Code, § 3530, provides as follows: "The pawnee may sell the property received in pledge after the debt becomes due and remains unpaid; but he must always give notice for thirty days to the pawner of his intention to sell, and the sale must be in public, fairly conducted, and to the highest bidder, unless otherwise provided by contract." The agreed statement shows that the bank did not comply with this section in making the sale, but effected it privately. This it could not have done in the absence of a special agreement. There is no

presumption of any exceptional arrangement between the parties, but, in the absence of anything to the contrary, the pledge is presumed to have been made upon the ordinary terms of the law. If either party asserts the existence of a special agreement, the burden is upon him to show it. 21 R. C. L. 684, 46. "No such agreement appears by the evidence, and the rights of the parties are to be determined under the above-stated general rule applicable to the sale of property delivered in pledge." *Halliday* v. *Bank of Stewart County,* 112 *Ga.* 461, 463 (37 S. E. 721). Thus the conclusion was demanded that the bank converted the cotton. It thereafter agreed with the plaintiff upon a valuation of it at which the defendant would account.

We cannot concur in the proposition that the agreement was without consideration. The liability of the defendant for the conversion was unliquidated. The plaintiff, if he chose to do so, was entitled to stand upon this agreement and promise, in lieu of his claim for the conversion. *Kennedy* v. *Maddox,* 15 *Ga. App.* 684, 686 (84 S. E. 153). It was necessary that the amount of the defendant's liability be determined by some persons, at some time, somewhere; and the settlement of this question between the parties was a sufficient consideration for the promise or contract upon which the plaintiff sued.

Where an agreement is made between parties in the nature of an accord and satisfaction of an original cause of action, and a part only of the resulting sum of the indebtedness agreed upon is paid by one party and the balance thereof remains unpaid, the other party may (in lieu of a rescission) retain the amount received under the compromise agreement and maintain an action for the balance due thereunder. *Farmers State Bank* v. *Singletary,* 22 *Ga. App.* 653 (2) (97 S. E. 90). The liquidation of a claim uncertain in amount is a legal consideration for a promise. A compromise or mutual accord and satisfaction is binding upon the parties. Civil Code (1910), § 4330; *Watkins* v. *Watkins,* 24 *Ga.* 402 (1) ; *City Electric Railway Co.* v. *Floyd County,* 115 *Ga.* 655 (1) (42 S. E. 45).

2. The plaintiff, in renewing his notes from time to time and in finally paying the entire debt, did not waive his demand against the bank. There are numerous decisions to the effect that one who gives or renews a note with full knowledge of facts which

would constitute a defense to it waives such defense. *Edison General Electric Co.* v. *Blount,* 96 *Ga.* 272 (1) (23 S. E. 306); *American Car Co.* v. *Atlanta Street Ry. Co.,* 100 *Ga.* 254 (1) (28 S. E. 40); *Atlanta Consolidated Bottling Co.* v. *Hutchinson,* 109 *Ga.* 550 (1) (35 S. E. 124); *Cooper* v. *National Fertilizer Co.,* 132 *Ga.* 529 (1) (64 S. E. 650); *Tuttle* v. *Stovall,* 134 *Ga.* 325 (67 S. E. 806, 20 Ann. Cas. 168); *Reeves Tractor Co.* v. *Barrow,* 30 *Ga. App.* 420 (6) (118 S. E. 456). The decision in each of these cases had reference to the defense of failure of consideration, or fraud, or one of such character as would nullify the actual promise except for the waiver,—that is, a defense which would show that the apparent obligation was apparent only. Here the parties were liable to each other upon distinct obligations. The plaintiff owed the balance of his indebtedness to the bank after the credit made, of ten cents per pound for the cotton. The bank was indebted to him upon a separate obligation for ten cents per pound additional. Because the respective obligations may have arisen out of the same transaction, or even out of the same contract, would not prevent the plaintiff from discharging in full his obligation and then demanding a performance on the part of the bank. Where cross-obligations or independent covenants exist between parties under the same contract, or otherwise, one of them cannot say to the other, "in complying with your obligation you have extinguished mine." There was no compromise of the dispute between the parties with respect to the liability of the bank to account to the plaintiff for the remaining ten cents per pound for the cotton. He paid the entire amount of his debt, less the sum which the bank actually credited thereon at the time of the making of the agreement which he now seeks to enforce and before the controversy arose.

The contention now under consideration is controlled adversely to the plaintiff in error by the decision of this court in *Roberts* v. *Bank of LaGrange,* 25 *Ga. App.* 343 (1) (103 S. E. 176), wherein it was held: "Where a debtor deposits with a bank cotton receipts as collateral security for a loan, and the bank, after being authorized by the debtor to sell the cotton for a certain amount, sells it for a less amount before the maturity of the loan, and, instead of crediting the proceeds of the sale against the loan, credits the same against an unsecured overdraft of the debtor, and de-

posits the balance in the bank to the debtor's credit; and where the debtor, upon a rendition to him by the bank of a statement of the transaction, protests against it, and leaves the balance thus deposited to his credit untouched, and never withdraws it or any part thereof, a renewal of the loan thereafter, without more, will not as a matter of law amount to a ratification of the sale of the cotton. The debtor's claim for the value of the cotton not being a defense to the note, but being rather in the nature of a set-off or counterclaim, the ruling here made is distinguishable from the cases of *American Car Co.* v. *Atlanta Street Ry. Co.,* 100 *Ga.* 254 (28 S. E. 40), *Atlanta Consolidated Bottling Co.* v. *Hutchinson,* 109 *Ga.* 550 (35 S. E. 124), and *Hogan* v. *Brown,* 112 *Ga.* 662 (37 S. E. 880), in which it was held that where a debtor renews a note with knowledge of a defense thereto, he cannot plead such defense and defeat a recovery in a suit on a renewal note." See also *Brown* v. *Horn,* 32 *Ga. App.* 95 (122 S. E. 710) ; *McDaniel* v. *Mallary Bros. Machine Co.,* 6 *Ga. App.* 849 (2) (66 S. E. 146).

3. The insistence of the plaintiff in error, that the bank was never liable to the plaintiff for more than the value of the cotton at the time and place of the sale, is without merit. If the plaintiff had refused to pay the notes and the bank had sued him thereon, and he had recouped for a conversion of the collateral, that, in the absence of a special contract, would have been his measure of damages, augmented by interest if the jury saw fit to include it. See Civil Code (1910), § 4396; *Tifton &c. Ry. Co.* v. *Butler,* 4 *Ga. App.* 191 (1) (60 S. E. 1087). Under a special contract his damage would have depended upon the nature of the agreement. Where parties enter into a special agreement with reference to the terms of a pledge, they will be bound thereby. If his action against the bank had been in trover, as for a conversion, he could have recovered the highest proved value between the date of the conversion and the trial. See *Bennett* v. *Tucker,* 32 *Ga. App.* 288 (123 S. E. 165).

The plaintiff, however, is proceeding upon an express agreement by the terms of which the bank credited him with ten cents per pound for the cotton, and agreed to credit him with ten cents per pound additional upon the receipt of "account sales." It thereafter got returns, but refused to abide its agreement. The measure of the plaintiff's recovery was the balance due thereon. For·

none of the reasons urged,—the only contentions made by the plaintiff in error being as stated above,—was it error to direct a verdict accordingly.

*Judgment affirmed.    Jenkins, P. J., and Stephens, J., concur.*