UNIVERSAL LEAF TOBACCO CO., INC., Plaintiff

v.

AMERICAN FIDELITY FIRE INSURANCE CO., Defendant

Civil No. 381-1973

District Court of the Virgin Islands

Div. of St. Croix

December 20, 1974

BAILEY, WOOD & ROSENBERG, ESQ. (WILLIAM N. BAILEY, of counsel), St. Thomas, V.I., *for plaintiff*

ROBERT A. ELLISON, ESQ., Christiansted, St. Croix, V.I., *for defendant*

YOUNG, *District Judge*

### MEMORANDUM OPINION AND ORDER

Plaintiff Universal Leaf Tobacco Company, Inc. (herein "Universal") moves this Court to compel enforcement of a settlement agreement entered into with defendant American Fidelity Fire Insurance Company (herein "AFFIC").

## I

The settlement agreement in question arises out of the construction of two federally subsidized housing projects in the Virgin Islands for The Virgin Islands Foundation for Housing and Economic Development, Inc. (herein "Foundation"). On September 18, 1971, the prime contractor on the project, Quantum Development Corporation (herein "Quantum"), contracted with Unitized Systems Company, Inc. (herein "USCO"), then a subsidiary of Universal, to furnish certain labor and materials as a subcontractor for the Croixville and Thomasville Projects. In accordance with the mandates of the Miller Act, defendant AFFIC, as Quantum's Surety, executed and issued payment and performance bonds securing Quantum's obligations as the prime contractor.

Beginning in early December, 1971, Quantum undertook the performance of the obligations required of it under its contract with Foundation. Having experienced financial difficulties throughout, Quantum defaulted on its obligations under its subcontracts with USCO and ultimately filed a voluntary petition in bankruptcy on June 30, 1972. Several months later AFFIC elected to exercise its rights as Surety and complete the work required by Quantum's prime contract with Foundation. Universal, as successor to USCO, has faithfully performed all of the terms and obligations of its subcontract with Quantum and, in turn, its surety AFFIC, and after repeated demands for payment, brought this action against AFFIC to recover its contract price for the apartment unit modules furnished together with its costs for other supplies, services and interest incurred, all amounting to $341,268.69 in damages.

Counsel for plaintiff and defendant then entered into settlement negotiations of this action, culminating in a final agreement on December 12, 1973, whereby AFFIC was to pay Universal $250,000.00 for an assignment of the latter's claim in the Quantum bankruptcy proceeding. Among such claims was Universal's potential entitlement to the sum of $115,221.00 paid in September, 1973 to Quantum Receiver Charles Joy pursuant to an order of the Referee directing said sum to be held in a separate account pending adjudication of claims thereto. On December 20, 1973, AFFIC was notified by its St. Croix counsel that Mr. Joy, prior to the December 12th agreement, had absconded with over $200,000.00 in receivership funds, including the above mentioned $115,211.00.

In a letter to Universal's attorney dated December 26, 1973, AFFIC's counsel advised that since the embezzlement antedated the settlement discussions between the parties, the agreement, predicated on the existence of the fund, was based on a mutual mistake of fact and could, therefore, be

avoided. The narrow issue before this Court relates to the validity of AFFIC's position.

## II

Plaintiff's motion to compel enforcement of the agreement despite the unavailability of the fund is based on its assertion that the money was not material to a resolution or compromise of AFFIC's independent liability; that at no time during the course of the negotiations was the existence of the fund ever discussed; and finally that Universal made no representation or warranties regarding the nature, extent, sufficiency or validity of any claim that it might have had against the bankrupt estate.

The Restatement of Restitution, Section 11 sets forth the standard by which this Court must determine the enforceability of a compromise agreement entered into on a mistaken assumption of facts. Although Section 11 concerns rescission of contracts which have already been executed in whole or in part, the theoretical underpinnings of the provision are nonetheless applicable to the instant executory agreement. Section 11 provides:

(1) A person is not entitled to rescind a transaction with another if, by way of compromise or otherwise, he agreed with the other to assume, or intended to assume, the risk of a mistake for which otherwise he would be entitled to rescission and consequent restitution.

(2) A person is entitled to rescind a transaction with another because of a mistake if the parties have so agreed, although otherwise he would not be entitled to a rescission.

(3) An agreement that there shall not be rescission of a transaction because of a mistake can itself be rescinded if the agreement was induced by fraud or material misrepresentation or by a mutual mistake as to the existence of a basic fact assumed by both parties.

As seen in the comments following Section 11, a compromise or settlement agreement will not normally be invalidated on the ground of mistake. Such agreements, by

113

their nature, imply a doubt as to the existence or extent of a claim, and this uncertainty will ordinarily not vitiate the validity of the settlement. In the Quantum bankruptcy proceeding, for example, claims to the $115,211.00 were asserted not only by plaintiff and defendant herein, but also several other creditors. At the time of the negotiation of the settlement, counsel for AFFIC was apparently of the opinion, based on his assessment of the law in the area, that the sum would ultimately be awarded to either AFFIC or Universal. The settlement agreement was thus entered into with the above element of risk as part of the bargain, and had counsel's judgment on this matter proved erroneous, the contract would not have been rendered void thereby. See International Motor Rebuilding Co. v. United Motor Exchange, Inc., 393 P.2d 992, 998 (Kan. 1964). In other words, because it is the presumed intention of the parties to a settlement agreement to forego further inquiry into the matter, they assume the risk of having been mistaken on the terms of the settlement in dispute. See Fieser v. Stinnett, 509 P.2d 1156, 1161–62 (Kan. 1973).

The controlling issue is thus whether the mistake of fact is the type of contingency which the parties foresaw as they entered into the settlement agreement. See Allen v. Hammond, 11 U.S. (Pet.) 63, 70–71 (1837).

> [For], even a specific statement by the parties that the transaction is final does not make it such, and it is not final *if there is a basic mistake as to matters not believed by the parties to be doubtful*. Compromises, like other agreements, are ordinarily based upon the assumption by both parties that certain facts, although not all the facts as claimed by one side, exist; and where this is so the transaction can be set aside and restitution granted if the basic assumptions are not true.

Restatement, Restitution, comment c, at 45 (1932) (emphasis added). See also Kiefer Oil and Gas Co. v. McDougal, 229 F. 933, 939 (8th Cir. 1916).

From the facts surrounding the execution of the contract between plaintiff and defendant, it is clear that the existence of the fund was not a conscious consideration of either party during the negotiations. True, the validity and extent of Universal's interest in the $115,211.00, to which AFFIC would have been entitled, was a matter which the parties believed to be in doubt; the ready availability of the fund, however, was not. Universal's claim that during the negotiations the existence of the fund was never discussed is answered by the fact that neither party could have reasonably foreseen such a serious breach of trust on the part of the Receiver. The parties assumed, albeit tacitly, that the $115,211.00 and interest thereon would be paid promptly on determination of the claims thereto.

Having established that the transaction was entered into under a mutual mistake of fact and that such mistake was material, I find that AFFIC, the party harmed thereby, may properly avoid the settlement agreement. Restatement, Contracts, Section 502 (1932). Illustration #2 following Section 502 is particularly appropriate to the instant case:

"A contracts to sell Blackacre to B. The value of the land has chiefly depended upon the timber on it and the parties contract on the assumption that the timber is still there. Unknown to both of them, however, it has been destroyed by fire. The contract is voidable by A."

It is difficult to conceive of a more clear-cut example of mutual mistake than in the case before me—a case in which the subject matter of the agreement disappears, without the knowledge of either party, prior to the formal execution of the contract.

### ORDER

In accordance with the above Memorandum Opinion and the reasons set forth therein, it is hereby

ORDERED that plaintiff Universal's motion to compel specific enforcement of the agreement which was negotiated with defendant as a settlement of this law suit be and the same is hereby DENIED.