## CARPENTER *v.* UNITED STATES.

One who enters into possession of land in virtue of an agreement or under-
  standing that he is to be a purchaser of it, cannot be held liable for use
  and occupation if the purchase be actually concluded.

APPEAL from the Court of Claims; the case as found by
that court having been thus:

In July, 1863, Major Hunt, of the corps of engineers, en-
tered into negotiations with one Carpenter, owner of an
island in Narragansett Bay, for the purchase of it by the
United States for military uses; and a parol contract for the
purchase and sale was then formally concluded; the terms
being approved by the Secretary of War. The price, as
stipulated, was $21,000. In August following, the officers
of the government, with the consent of Carpenter, entered
into possession of the island and began to prepare for forti-
fying it. *The possession then taken they have ever since retained.*
Upon examination, however, it was found and so reported
by the Attorney-General, that under an act of May 1st,
1820,* an executive department had by law no authority to
purchase land on account of the government. Consequently
the verbal arrangement with Carpenter remained uncon-
summated, until 1866. On the 12th of June, of that year,
Congress made an appropriation for the purchase of sites
then occupied, and proposed to be occupied for sea-coast de-
fence, and on the 7th of August next following, the pur-
chase-money of the island ($21,000) was paid to Carpenter,
and *accepted by him without any claim for interest or rents, so far
as it appeared, and he delivered a deed for the property to the
United States.* In this state of things Carpenter now, De-
cember 7th, 1867, filed a petition in the Court of Claims,
claiming compensation from the United States for the use
and occupation of the island from the time the United States
officers, with his consent, took possession, after the verbal

---

* 3 Stat. at Large, 568.

arrangement to purchase, until the deed was made and the purchase-money was paid, that is, from August, 1863, to August, 1866.

The question was whether, upon the case stated, an action for use and occupation could be sustained.

The Court of Claims, as appeared by its opinion,* considered that the law (*i. e.*, the statute of 11 George II, chapter 19, § 14) which gives the action for use and occupation always required that some contract of demise should subsist; in other words, that the relation of landlord and tenant must be established;† that there was no such relationship here. That independently of this the claim rested on an implied contract, but that where there was an express contract to buy, a contract to pay rent could not arise by mere inference. Relying on these views, and citing the English case of *Kirtland* v. *Pounsett*,‡ it accordingly decreed a dismissal of the petition. From that decree the claimant appealed.

*Messrs. J. M. Carlisle and J. D. McPherson, for the appellant:*

The right to sue for use and occupation does not rest, as the court below assumed, on the statute of 11 George II. It existed previously; though until the passing of the statute mentioned the plaintiff was nonsuited, if a demise was proved.§ Use and occupation may well lie without a demise.

---

* 6 Court of Claims, 162.

† It having been held in *Brett v. Read* (1 W. Jones, 329) that where there had been an actual lease, action for use and occupation would not lie, the statute of 11 George II, chapter 19, § 14, enacted that—

"It should be lawful for a landlord, where the agreement was not by deed, to recover a reasonable satisfaction for the lands, tenements, or hereditaments held or occupied by the defendant, in an action on the case for the use and occupation of what was so held or enjoyed; and if, on the trial of such action, any parol demise, or any agreement (not being by deed) whereon a certain rent was reserved, should appear, the plaintiff in such action should not therefore be nonsuited, but might make use thereof as an evidence of the *quantum* of damages to be recovered."—REP.

‡ 2 Taunton, 145.

§ Churchward v. Ford, 2 Hurlstone & Norman, 448.

The English case of *Kirtland* v. *Pounsett,* cited by the Court of Claims, does not apply.   The report says:

"Mansfield, C. J., at first inclined to think the action might be supported; for that if a man had contracted for the purchase of an estate of the annual value of many thousand pounds, and had through the imprudence of the vendor been permitted to take possession, which he might possibly retain for several years pending the discussion of the title in a court of equity, it would be strange if the purchaser could hold possession and receive the profits during all that time without paying any consideration for it to the vendor.   *But upon the ground that during all the defendant's occupation of the premises the plaintiff had been in possession of the purchase-money, of which he had made or might have made interest, the Chief Justice directed a nonsuit, with liberty to move to set it aside.*"

On the motion to set aside the Chief Justice said he doubted extremely whether in any case the plaintiff could recover.   If no money had been paid, he said, it might perhaps be a different question, but if one paid his money and took possession, he asked:

"Is it not just that one party should take back his money and the other take back his house?"

On the other hand, *Howard* v. *Shaw,* in the English Exchequer,* is in our favor.   There the defendant had entered into possession under a valid contract to purchase, and deposited part of the price.   He afterward took advantage of some dispute to demand back his deposit, and received part, but not receiving the whole kept possession, until an action of ejectment was brought against him, when he surrendered the premises.   The vendor then sued for use and occupation. At the trial the point was made by the defendant that the action could not be maintained, because the relation of landlord and tenant had never existed; and the Chief Baron being of that opinion, nonsuited the plaintiff.   Upon rule being moved for, to set aside the nonsuit and enter a verdict, the

* 8 Meeson & Welsby, 118.

Chief Baron said he had entertained doubts, but was satisfied the plaintiff ought to recover; that "while the defendant occupied under a valid contract for the sale of the property he could not be considered as a tenant." He goes on:

"But what is the relation of the parties when the contract of sale has gone off? The defendant remains in possession with the consent of the landlord, but without any title to or contract to purchase the land. Under these circumstances he is a tenant at will, and if the occupation is beneficial to him, that is sufficient to imply a contract to pay a reasonabe sum by way of compensation for such occupation."

Baron Parke was of the same opinion. Baron Alderson said on the point:

"While the defendant was in possession under this contract for sale, he was a tenant at will *under a distinct stipulation that he should be rent free*, therefore for that term no action for use and occupation can be brought against him, but when that contract is at an end, he is a tenant at will simply: *therefore from that time he is to pay for occupation*."

Baron Rolfe concurred; and the rule was made absolute.

The Court of Claims, in its opinion, assumes that the defendants entered under "a contract" of purchase, and that this "contract" was finally consummated when the "statutory obstacles" were removed.

But there was no such "contract." Carpenter offered to sell the land, but there was no one to buy; no one to agree to buy. Carpenter never was bound to convey, for there was no one to whom he could be bound. The contract was not "consummated" in 1866; it was but made in 1866. Carpenter's offer was a continuing offer, which he could have withdrawn at any time, and it was not accepted till 1866. There was no statutory obstacle "removed," but statutory power was given. The act of May, 1820, was not repealed, nor its provisions suspended; they were complied with.

*Mr. S. F. Phillips, Solicitor-General, contra.*

Mr. Justice STRONG delivered the opinion of the court.

Though it has sometimes been said that an action of debt, or assumpsit, for the use and occupation of land, can be maintained only when the relation of landlord and tenant has existed between the plaintiff and defendant, this is not strictly accurate, if it be meant that a demise must be in fact proved. It is true that the statute of 11 George II, chapter 19, § 14, enacted that the action might be sustained when a demise has been proved, but the action existed before the statute was enacted, and the only effect of the statute was to enlarge its sphere. Privity of contract is doubtless essential in all cases. But when the defendant has entered and occupied by permission of the plaintiff, without any express contract, the law implies a promise on his part to make compensation or pay a reasonable rent for his occupation. In such a case, the consent of the owner to the defendant's entry, followed by such entry and by subsequent occupation, may be considered equivalent to a demise, or at least *primâ facie* evidence of a demise. This is because a demise with a corresponding agreement to pay rent, or make compensation for the use of the property, is consistent with an unexplained entry by the owner's consent, and because it is a reasonable presumption that occupation thus taken was intended to be paid for. No reason, however, for such an implication exists, when an express contract or an arrangement between the parties shows that it was not intended by them to constitute the relation of landlord and tenant, but that the occupation was taken and held for another purpose. And this is shown when the entry has been made in pursuance of an agreement to purchase, whether that agreement was in writing or in parol. Such an agreement sufficiently explains the allowed entry, without the necessity of resorting to any implication of a contract other than that actually made. Accordingly, it was ruled in *Kirtland* v. *Pounsett*,* that an action for use and occupation cannot be maintained against one who took possession under a

---

* 2 Taunton, 145.

contract of sale, which failed afterwards to be consummated, in consequence of the vendor's inability to make title. It is true, it appeared in that case the purchase-money had been paid, and by the use of it the vendor might have been regarded as compensated for the defendant's occupation, yet C. J. Mansfield said : " A contract cannot arise by implication of law under circumstances the occurrence of which neither of the parties ever had in contemplation." The same principle was asserted in *Rumball* v. *Wright*.* And in the later case of *Winterbottom* v. *Ingham*,† the same doctrine was declared, though the purchase-money had not been paid, and the reason given was, that when the defendant was let into possession, both parties understood that he made no promise to pay rent. The holding was in the expectation that title would be made and the purchase completed. There are other decisions to the same effect. It is true that in *Howard* v. *Shaw*,‡ it was held that after a contract of sale had been rescinded, an action for use and occupation might be maintained against a defendant who had remained in possession with the consent of the owner, but without any title or contract for the purchase of the land, and that a recovery might be had for the possession retained after the contract of purchase was terminated. But he was not held liable for rent during the time the contract subsisted, and he could not have been for the obvious reason that the contract was inconsistent with any understanding that rent was to be paid. And no case can be found, it is believed, in which one who entered in virtue of an agreement or understanding that he was to be a purchaser, has been held liable in an action for the use and occupation of the land, if the purchase was actually concluded.

It is contended, however, on behalf of the present plaintiff, that the contract of purchase under which, or in the expectation of the completion of which the United States entered, and under which they continued to hold until the

---

* 1 Carrington & Payne, 589.   † 7 Adolphus & Ellis, New Series, 611.
‡ 8 Meeson & Welsby, 118.

deed was made and the purchase-money was paid, was invalid; that until the act of Congress of 1866 was passed, no executive department had authority to purchase the island, and that, therefore, there was no legal contract for the purchase in existence until the deed was made and the price paid. But if this be conceded, it can make no difference. Let it be that neither party could have enforced the parol arrangement, it is still true that it was utterly inconsistent with any understanding that the parties contemplated the one was to pay and the other was to receive rent for the occupation of the property. The understanding of the parties is the material thing. Unless it was in their contemplation that compensation, other than the price stipulated to be paid for the transfer of the title, should be made, as C. J. Mansfield said, in *Kirtland* v. *Pounsett*, a contract to pay rent cannot arise by implication of law.

The plain common sense of the case is, that if the plaintiff was entitled to anything beyond what he has received, it was to interest on the purchase-money from the time the possession was taken until the price of the sale was paid. That he should have demanded before he delivered his deed. Not having done so, but having accepted the principal and consummated the sale, he cannot now assert that the relation in which his vendee stood to him was that of a tenant to a landlord, and recover interest in the shape of damages for the breach of an implied promise to pay rent for the use and occupation of the island. There is no room in the facts found by the Court of Claims for the implication of any such promise.

JUDGMENT AFFIRMED.