338 So.2d 767 (1976)
Charlie WEBB, Jr., et al.
v.
Joseph YOUNG, Jr.
No. 7614.
Court of Appeal of Louisiana, Fourth Circuit.
October 13, 1976.
Rehearing Denied November 16, 1976.
Writ Refused January 19, 1977.
*768 William W. Rosen, New Orleans, for plaintiffs-appellants.
O'Keefe, O'Keefe & Berrigan, Peggy M. Vicknair, New Orleans, for defendant-appellee.
Before STOULIG, BOUTALL and MORIAL, JJ.
MORIAL, Judge.
Plaintiffs, Charlie Webb and his wife Gloria individually and as natural tutrix of her two minor daughters, appeal the judgment dismissing their suit for damages for breach of contract.
Plaintiffs entered into an agreement to purchase a house with defendant Joseph Young, Jr., the operator of Garden Homes, on July 6, 1968. The house had not yet been built, but was to be located at 1004 Marshall Street, Marrero, Louisiana. The agreement provided for a purchase price of $21,850.00 on the terms of $500.00 cash of which $300.00 was paid on the date of the agreement with the balance of $200.00 to be paid on July 9, 1968. The balance of the purchase price was to be financed by a first and second mortgage. Defendant was to arrange the financing. Plaintiffs were to pay the closing costs at the act of sale.
On or about December 18, 1968 the plaintiffs were informed that the house was ready for occupancy and defendant was prepared to pass the act of sale. However, plaintiffs were only able to pay $200.00 at the time leaving a balance of $560.00 due in closing costs. The parties then agreed that the Webbs would be allowed to occupy the house with the condition that monthly payments would be made. At the time the Webbs were able to provide the closing *769 costs in full, the act of sale would be passed. Any payments made by the Webbs prior to the act of sale were to be attributed to the mortgage the plaintiffs were to grant at the time of the sale. Plaintiffs received a book from defendant which stated: "Amount, $23,000.00, rate 8% Payments, $197.73 Per Mo." and showed the distribution of the monthly payment as follows: "Payment 185.07 mo. Insurance 7.66 Taxes 5.00." The Webbs lived in the house for approximately seven months without ever fully meeting a monthly payment or paying the closing costs. In late May or early June, defendant Young placed an eviction notice on the door of the house. They vacated in early or mid-July 1969. At that point they had paid defendant a total amount of $1,190.00.
Plaintiffs seek a return of all monies paid to Young damages of approximately $19,000.00 and attorney's fees.
Plaintiffs claim damages for mental and physical discomfort suffered as a result of the allegedly defective condition of the house. They allege that the central heating and cooling system did not function; that there was no electricity or cooking facilities available and other defects. Plaintiffs contend defendant embarrassed and humiliated them by placing a notice of eviction on their door.
Plaintiffs claim they detrimentally relied on defendant to obtain financing for them. They allege that they were unaware of the need to pass an act of sale or that further action was necessary on their part to conclude the sale. Plaintiffs deny any rental agreement and contend that defendant has no grounds to recover on a quantum meruit basis.
Defendant contends that he had arranged financing and was prepared to pass the act of sale in late December 1968. He contends that when plaintiffs could not provide the closing costs, the parties entered into an agreement whereby plaintiffs could occupy the premises on the basis of a month to month rental.
Defendant agreed to credit the monthly rental payments to the mortgage when appellants provided the costs and the act of sale and mortgage were passed. Defendant urges in the alternative that he is entitled to the monies he received on a quantum meruit basis.
The trial judge concluded that plaintiffs failed to prove their case by a preponderance of the evidence. The trial judge found that plaintiffs failed to produce sufficient evidence to support their claim as to the defective condition of the house at the time they took occupancy.
The issues presented to this court on appeal are:
(1) whether or not plaintiffs are entitled to damages for breach of warranty; (2) whether or not defendant breached the contract by failing to arrange financing or by deceiving plaintiffs as to its effect; and (3) whether or not defendant was entitled to recover on the basis of a lease agreement or on a quantum meruit basis; and, if so, what amount?
Plaintiffs have no basis on which to assert an action in warranty. Recovery on the ground of breach of warranty is predicated on the existence of a sale. See LSA-R.C.C. Article 2475, et seq. The cases cited by plaintiffs involving warranty pertain to situations where an actual sale had occurred. Schamens v. Crow, 326 So.2d 621 (La.App. 2 Cir. 1976); Rotolo v. Stewart, 127 So.2d 24 (La.App. 1 Cir. 1961).
An agreement to sell is not a sale where the execution of a later final act of sale is contemplated by the parties. It is not translative of title. Davis v. McCain, 171 La. 1011, 132 So. 758 (1931); Gibsland Supply Co. v. American Employers Insurance Co., 242 So.2d 310 (La.App. 2 Cir. 1970), writs denied, 257 La. 987, 244 So.2d 858 (1971). The passage of the act of sale was conditioned on the payment of closing costs which appellants did not pay. A sale did not occur. LSA-R.C.C. Article 2471. Therefore, plaintiffs' claim in warranty is without merit.
There is a conflict in the evidence as to whether or not defendant had arranged *770 financing. The trial judge found that defendant had arranged the financing and was ready to pass the act of sale. Where there is a conflict in evidence, a reviewing court must give great weight to the findings of the trial court. Curole v. Acosta, 303 So.2d 530 (La.App. 1 Cir. 1974).
We do not find that plaintiffs were deceived by defendant as to their obligations under the agreement. Plaintiffs' counsel argues that his clients did not realize that the agreement to purchase was not the final act transferring title. The record shows that both Mr. and Mrs. Webb read the agreement. Mrs. Webb had a 12th grade education. It is apparent from the testimony of Mrs. Webb that the couple realized the necessity of paying the closing costs in order to become the owner and retain possession of the house. They requested an extension of time in which to obtain the closing costs when Young told them he was prepared to pass the act of sale. On cross-examination plaintiffs' lawyer asked Mr. Young why he had not returned the $500.00 deposit when they could not purchase the house in December. He replied: "If they would not have asked me to go along and let them move into the house and occupy it until they got their closing costs together we would have reached some distribution of the $500.00. I went along with them." Mrs. Webb's testimony affirms his statement. On cross-examination defendant's lawyer asked her:
Q. By the document, the Purchase Agreement, you all were to pay the closing costs at the act of sale, is that correct?
A. Well, we was supposed, but we didn't have it then when it come up.
Q. And then you asked Mr. Young for an extension of time and he agreed to that?
A. That's right.
Q. He agreed to let you live in the house, isn't that correct?
A. That's right.
It is obvious that the Webbs were aware of a further financial obligation on their part under the purchase agreement. They may not have understood all the technicalities involved in an act of sale; however, they were aware that one would take place when they were able to pay the closing costs.
There is further conflict in the evidence as to whether or not there was a rental agreement between the parties.
Defendant Young in his answer alleges a rental agreement calling for a monthly payment of $185.00 to have been made between the parties. In the alternative he asks to keep the monies alleging that he has a right to them on the basis of quantum meruit. The testimony of defendant reflects that he believed some type of agreement in the nature of a lease existed between the parties. He was questioned by plaintiffs' counsel as to the nature of the agreement:
Q. What you are saying is really you had a mortgage payment, is that right?
The Court: He didn't say that.
A. No. I said that I agreed to rent them the house at the same amount it would cost them if they had their closing costs and took title. I would rent it to them until such time as they got the balance of the closing costs together to take title.
However, there is some confusion in the record as to the exact amount agreed upon by the parties. In his answer, defendant alleges that $185.00 was the amount agreed upon. However, the actual amount due as listed in the payment book received by plaintiffs was $197.73. There can be no contract or lease in the absence of a stipulation or agreement between the parties as to the amount of rental to be paid. McCain v. McCain Bros., 165 La. 884, 116 So. 221 (1928); LSA-R.C.C. Article 2671; Groghan v. Billingsley, La.App., 313 So.2d 255 (4 Cir. 1975), writs refused La., 318 So.2d 46 (1975). Therefore, we do not find the presence of a lease agreement.
However, while it is true that mere occupancy does not create a lessor-lessee relationship; recovery may be allowed on a quantum meruit basis where a fair rental *771 value is alleged and proven. Faroldi v. Nungesser, 144 So.2d 568 (La.App. 4 Cir. 1962).
In Groghan, supra, a vendor-builder was allowed to collect a monthly rental for the period of occupancy of a house by a prospective purchaser on a quantum meruit basis in spite of the defective condition of the house. The court there based the award upon the fair market value of a house of the nature which was occupied; it based its award in part upon a concession by the defendants that some amount was owed. The transcript herein reflects the recognition of plaintiffs that some amount was due for the occupancy. On cross examination defendant's attorney questioned Mrs. Webb:
Q. You paid him that $100.00 but you still had not gotten your electricity?
A. That's right.
Q. You were still living between houses so to speak?
A. That's right.
Q. Yet you paid him that $100.00.
A. Yeah, we couldn't live there for nothing. In Faroldi, supra, recovery was not allowed on a quantum meruit basis because plaintiffs failed to allege and prove the rental value of the property occupied. Mr. Young alleged in his answer that $185.00 constituted a fair rental value on the house. At trial he implied that he felt $197.00 was a fair amount to charge plaintiffs on a monthly basis.
The total amount paid to defendant by the Webbs was $1,190.00. Based on a seven month occupancy, they paid $170.00 per month rent. We find that this amount is not unreasonable.
Under the circumstances herein, we conclude that on the basis of quantum meruit defendant is entitled to retain the monies paid to him.
The judgment of the district court is affirmed.
AFFIRMED.