785 P.2d 84

**Alfred Thyrle STAPLEY and Doris Lorraine Stapley, as Trustees of the Alfred Thyrle Stapley Family Revocable Living Trust dated November 8, 1983, Plaintiffs–Appellees,**

v.

**AMERICAN BATHTUB LINERS, INC., an Arizona corporation, Defendant–Appellant.**

No. 1 CA–CV 88–160.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 14, 1989.

Lewis & Roca by Andrew S. Gordon, Phoenix, for defendant-appellant.

BROOKS, Judge.

This appeal is from a judgment entered upon a jury verdict requiring a purchaser of real property to pay rent to the seller for the period during which the purchaser was in possession of the property prior to transfer of legal title. We consider whether the seller's action for rent was permissible under the doctrine of equitable conversion or A.R.S. section 12–1271.

## FACTUAL AND PROCEDURAL BACKGROUND

We view the evidence in a light most favorable to sustaining the verdict. *Venerias v. Johnson,* 127 Ariz. 496, 622 P.2d 55 (App.1980). In late 1984, appellant American Bathtub Liners, Inc., (ABL) and appellees Alfred Stapley and Doris Stapley, as trustees of the Alfred Thyrle Stapley Family Trust, entered into an agreement whereby ABL would purchase a warehouse owned by the trust and occupied by Stapley Wholesale.[1] At the parties' direction, a title company prepared escrow instructions setting forth the terms of the purchase agreement. The escrow instructions provided that the sale would close on or before March 15, 1985.

Because of a delay in the construction of the Stapleys' new offices, the parties agreed to extend the close of escrow. They executed supplemental escrow instructions, which provided that escrow would close on the earlier of September 14, 1985, or five days after completion of the Stapleys' new offices. The delay required ABL to extend the lease at its existing location for six months, at a cost of over $2,000 per month in increased rent. According to the supplemental escrow instructions, half of the increased rent would be charged to the Stapleys at the close of escrow.

Bethancourt & Fuller, P.C. by Donald O. Fuller and Randal L. Stowell, Mesa, for plaintiffs-appellees.

1. Hereinafter, "the Stapleys" refers to Alfred and Doris Stapley, whether acting as individuals, as trustees for their family trust, or as owners of Stapley Wholesale.

Escrow did not close by September 14, again because the Stapleys' new offices were not complete. Consequently, ABL was again forced to extend its existing lease, this time on a month-to-month basis, at the cost of a further rent increase and the forfeiture of its $4,300 security deposit.

On November 14, 1985, the Stapleys allowed ABL to take partial possession of the premises. At that point, the Stapleys believed that escrow would close within five days. The parties had no agreement that ABL would pay rent for its use of the premises. The Stapleys continued to occupy part of the premises until December 3, 1985. Escrow did not close as anticipated because disputes arose over whether the Stapleys were required to provide a survey of the premises prior to closing and over the amount of their liability for ABL's increased rent and the forfeiture of its security deposit.

In a letter dated November 26, 1985, the Stapleys requested that ABL pay rent for its use of the premises from November 14, 1985, until the close of escrow. On December 13, 1985, the Stapleys repeated the request for rent and suggested a closing date of January 6, 1986, because closing after the first of the year would be advantageous to them.

The disputed survey was completed on January 2, 1986. On January 10, 1986, the Stapleys' attorney wrote to ABL's attorney, demanding that escrow close within thirteen days or be cancelled and also demanding the payment of rent. On the same date, the Stapleys sent a thirteen-day cancellation notice to the title company. The parties subsequently reached an agreement on the amount to be charged to the Stapleys for ABL's increased rent. Escrow closed on January 24, 1986.

The Stapleys sued ABL, seeking payment of back rent for the period during which ABL occupied the premises prior to the close of escrow. The jury returned a verdict in the Stapleys' favor for $13,625. ABL moved for a judgment notwithstanding the verdict, arguing that its liability was barred by the doctrine of equitable conversion and/or A.R.S. section 12–1271(3). The trial court denied this motion as well as ABL's subsequent motion for new trial, and ABL timely appealed.

## EQUITABLE CONVERSION

ABL argues that the doctrine of equitable conversion bars the Stapleys' action for rent. Under this doctrine, ABL contends, when a buyer takes possession of real property under an executory contract for sale, the seller may not maintain an action against the buyer for rent if the parties had no express agreement regarding the payment of rent and the buyer does not materially breach the contract.

Conversely, the Stapleys maintain that their repeated demands that ABL pay rent preclude any implication that possession was intended to be gratuitous. They argue that ABL had a duty to pay rent because of an implied tenancy, and they contend that the doctrine of equitable conversion is irrelevant because it does not give a buyer the right to possession.

■ The doctrine of equitable conversion is based upon the theory that a buyer under a contract of purchase has equitable title to the property. *See Lebrecht v. Beckett*, 96 Ariz. 389, 396 P.2d 13 (1964). Under the doctrine, the seller holds the property in trust for the buyer, and the buyer is deemed to hold the purchase price in trust for the seller. *Smith v. Tang*, 100 Ariz. 196, 203, 412 P.2d 697, 703 (1966). *See also Chapline v. North American Acceptance Corp.*, 25 Ariz.App. 465, 469, 544 P.2d 682, 686 (1976) (purchaser under a contract of sale is the equitable and beneficial owner of the property and bears the risk of loss prior to completion of the contract).

■ Nevertheless, despite the transfer of equitable title, the buyer is not entitled to possession prior to the transfer of legal title unless the contract expressly entitles him to possession or the seller voluntarily grants him possession. 8A *Thompson on Real Property* § 4449, at 286–87 (1963). When the buyer does take possession prior to the transfer of title, however, he is generally not considered to be a tenant. *Id.* (Supp.1981) at 39; *see also* 77 Am.Jur.2d,

*Vendor and Purchaser* § 322, at 484; *MacKenna v. Jordan,* 123 Ga.App. 801, 182 S.E.2d 550 (1971); *Panhandle Rehabilitation Center, Inc. v. Larson,* 205 Neb. 605, 288 N.W.2d 743 (1980). As one commentator has explained:

> In most jurisdictions, a purchaser under a real estate contract who takes possession prior to the closing of title is not considered a tenant. Upon execution of a valid contract to sell real property, the purchaser, under the doctrine of equitable conversion, is viewed as the owner. Consequently, his possession is considered an incident to equitable fee ownership rather than pursuant to a landlord-tenant relationship.

R. Schoshinski, *American Law of Landlord and Tenant* § 1:7, at 20 (1980) (citations omitted). Thus, a purchaser in possession does not impliedly promise to pay rent.

> Where the vendee under a contract for the sale and purchase of land enters into possession of the land before the conveyance of the title to him, and occupies the property under the contract, which is ultimately carried into effect, the law does not imply a promise upon the purchaser's part to pay rent during the time of his occupation of the premises, and an action for use and occupation cannot be maintained against him. The circumstances of the occupancy repel any implication of a promise upon the vendee's part to pay rent. The price agreed upon is presumed to be a sufficient consideration for the intermediate occupation of the land as well as the ultimate conveyance of title. The title of the purchaser, as far as his right to occupy is concerned, relates back to the time when he first took possession under his contract to purchase; or, as the rule is sometimes expressed, the previous tenancy is merged in the subsequent conveyance of the fee.

77 Am.Jur.2d, *Vendor and Purchaser* § 324, at 485 (citing *Carpenter v. United States,* 84 U.S. 489, 21 L.Ed. 680 (1873); (other citations omitted)).

In *Carpenter,* the Supreme Court held that a seller could not recover rent under an implied promise to pay rent from a buyer who took possession of the property with the seller's consent. The Court first noted the general principle that where a party occupies premises with the owner's consent, but without an express contract, "the law implies a promise on his part to make compensation or pay a reasonable rent for his occupation." 84 U.S. at 493, 21 L.Ed. at 681. The court then qualified this general principle:

> No reason, however, for such an implication exists, when an express contract or an arrangement between the parties shows that it was not intended by them to constitute the relation of landlord and tenant, but that the occupation was taken and held for another purpose. And this is shown when the entry has been made in pursuance of an agreement to purchase, whether that agreement was in writing or in parol. Such an agreement sufficiently explains the allowed entry, without the necessity of resorting to an implication of a contract other than that actually made....
>
> Unless it was in [the parties'] contemplation that compensation, other than the price stipulated to be paid for the transfer of the title, should be made ... a contract to pay rent cannot arise by implication of law.

84 U.S. at 493–94, 21 L.Ed. at 681–82 (citation omitted); *See also Marshall v. Bare,* 107 Idaho 201, 687 P.2d 591 (Ct.App.1984) (no implied promise to pay rent where purchaser took possession of house with seller's consent prior to transfer of title, parties had no express agreement that rent would be paid, and purchaser did not disaffirm contract); *cf. Smith v. Baldwin,* 611 S.W.2d 611 (Tex.1980) (seller entitled to rent where sale never closed); *Webb v. Young,* 338 So.2d 767 (La.Ct.App.1976) (seller allowed to recover rent where buyers admitted that they owed rent); *Groghan v. Billingsley,* 313 So.2d 255 (La.Ct. App.1975) (seller entitled to rent, based in part upon buyer's concession that some rent was owed).

■ In the instant case, it is undisputed that ABL obtained possession of the premises with the Stapleys' consent and without

any agreement regarding rent. We recognize that the Stapleys consented to ABL's possession in the belief that escrow would close within five days. Nevertheless, the delay in the closing did not alter the parties' initial agreement that ABL could take possession without paying rent. When the Stapleys consented to ABL's early occupancy, they assumed the risk that the close of escrow might be delayed—not an unforeseeable occurrence in real estate transactions. On the other hand, in taking possession before close of escrow, ABL assumed the risk that the sale would not close at all, in which case ABL would be required to vacate the premises and would perhaps be liable for rent. We note that *both* parties shared equally in at least one of the benefits of this arrangement—relief from liability for the increased rent at ABL's former location.

The Stapleys' subsequent demands that ABL pay rent were merely unilateral attempts to modify the parties' agreement. ABL objected to those demands and refused to acknowledge any obligation to pay rent. The purchase agreement was pending throughout ABL's occupancy and the sale eventually closed, with title transferring to ABL. In our view, absent a demand by the Stapleys that ABL vacate the premises, ABL's continued possession pending the close of escrow did not create an implied tenancy.[2]

## UNJUST ENRICHMENT/QUANTUM MERUIT

In support of the verdict, the Stapleys argue that they are entitled to recover the property's reasonable rental value under a theory of quantum meruit because ABL will be unjustly enriched if it is not required to pay for the benefit of its occupancy.

Quantum meruit is an equitable remedy based upon the premise that one who benefits by the labor and materials of another should not be unjustly enriched. *City of Sierra Vista v. Cochise Enterprises, Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (App.1984). A claim for unjust enrichment requires proof of the following five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provided by law. *Id.*

Here, the evidence does not support a finding that the Stapleys suffered an impoverishment. ABL's occupation of the premises does not appear to have caused the Stapleys either to incur additional expenses or to be deprived of funds that they might otherwise have received. Nothing in the record suggests that the Stapleys had been paying or receiving rent for the premises before ABL took possession or that, had ABL not moved in, the Stapleys would have either leased the property to another party pending the close of escrow or delayed moving into their own new offices when construction was complete. Moreover, although early occupancy was a benefit to ABL, the purchase price is presumed to have included sufficient consideration for that benefit. *See* 77 Am.Jur.2d, *Vendor and Purchaser* § 324, at 485. We conclude that the record will not support a judgment for the Stapleys based upon quantum meruit.

### A.R.S. Section 12–1271

The Stapleys also argue that they were entitled to recover rent under A.R.S. section 12–1271(2). ABL disagrees, contending that subsection 3 of that statute, in fact, precludes the Stapleys from recovering rent. The statute sets forth the situa-

---

**2.** The Stapleys' brief on appeal contains the assertion that their January 10, 1986, letter demanded that ABL vacate the premises immediately if it did not intend to pay rent prior to close of escrow. The record does not support this assertion. In fact, the letter stated,

[i]f American Bathtub Liners, Inc. does not pay the reasonable and full rent as part of the

close of escrow[,] ... following the close of escrow we will pursue legal remedies in a court of law to collect the reasonable value of the rent for the building. If your clients do not *intend to close escrow* and do not intend to lease the building then they should vacate the premises immediately.

(Emphasis added.)

tions in which an action may be filed to recover rent. It provides, in relevant part:

A person *entitled thereto* may bring an action for and recover rent, or a fair and reasonable satisfaction for the use and occupation of real property in the following cases:

....

2. When lands are held and occupied without a special agreement for rent, or when a tenant remains in possession after termination of his right of possession.
3. When possession is obtained under a written or oral agreement for the purchase of premises, and before deed is given, the right to possession is terminated by forfeiture or in compliance with the agreement, and possession is wrongfully refused or neglected to be given on demand made by the party entitled thereto.

(Emphasis added.) Because we determine that neither subsection entitles the Stapleys to recover rent, we do not consider whether one subsection prevails over the other. We consider subsection 3 first.

■ The Stapleys contend that because transfer of possession before close of escrow was not an express term in the agreement for sale, ABL did not take possession "under" a purchase agreement and, accordingly, subsection 3 does not apply. We disagree. It is true, of course, that the original agreement for sale did not obligate the Stapleys to permit ABL to occupy the premises before close of escrow. Later, however, the parties mutually agreed that ABL could take possession, resulting in an oral modification of their agreement. Indeed, absent the agreement for sale, it seems rather clear that the Stapleys would not have permitted ABL to occupy the premises. Thus, ABL obtained possession "under" the purchase agreement.

Furthermore, the remaining preconditions to recovery of rent under subsection 3 have not been satisfied. First, ABL's right to possession was not terminated before the close of escrow. A request for rent is not equivalent to a termination of the right to possession, especially where, as here, the last request was made contemporaneously with a thirteen-day cancellation notice. Second, ABL could not have "wrongfully refused or neglected" to give possession because Stapley never demanded possession. We therefore agree with ABL that the Stapleys were not entitled to recover rent under subsection 3. We next consider subsection 2.

■ It is undisputed that ABL occupied the premises without "a special agreement" for rent. Nevertheless, for reasons discussed in the preceding sections, we conclude that Stapley is not a "person entitled" to rent within the meaning of the introductory clause in section 12–1271. A seller has no right to expect rent when he allows a buyer to take possession of the premises prior to the transfer of legal title without an agreement that rent will be paid, provided that the sale in fact closes. Under these circumstances, the buyer is not a tenant and the purchase price is presumed to include sufficient consideration for the buyer's occupancy. Because the Stapleys are not "entitled" to rent, they are precluded from seeking recovery under section 12–1271(2).

We conclude that the jury's verdict was erroneous as a matter of law. Upon remand, the trial court is directed to enter judgment notwithstanding the verdict in favor of ABL. We grant ABL's request for attorney's fees on appeal pursuant to A.R.S. section 12–341.01, upon its compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Reversed and remanded.

GRANT, C.J., and GERBER, Acting P.J., concur.