851 P.2d 115

The STATE COMPENSATION FUND, Plaintiff–Appellant,

v.

George IRELAND; Helitec Corporation, a corporation; Lord, Bissell & Brook; Underwriters at Lloyds of London; Globe Air, Inc., Defendants–Appellees.

No. 1 CA–CV 90–0234.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 15, 1992.

Reconsideration Denied Nov. 23, 1992.

Review Denied May 19, 1993.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by John H. Westover, Steven M. Rudner, Phoenix, for plaintiff-appellant.

Snell & Wilmer by Robert H. Oberbillig, Steven D. Leach, Phoenix, for defendant-appellee George Ireland.

Beus, Gilbert & Morrill by Michael R. Devitt, Christine R. Taradash, Phoenix, for defendants-appellees Helitec, Lord, Bissell & Brook, Underwriters at Lloyds of London, Globe Air, Inc.

## OPINION

EHRLICH, Judge.

The Arizona State Compensation Fund ("Fund") appeals from summary judgment granted in favor of George Ireland ("Ireland") and the Helitec Corporation, Lord, Bissell & Brook, Underwriters at Lloyds of London and Globe Air, Inc. ("settling defendants"). For the following reasons, we affirm the entry of judgment in favor of the settling defendants, reverse the judgment in favor of Ireland and remand this case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The Fund seeks to recover the amount of the compensation and other benefits it paid on a workers' compensation claim following a deceased employee's widow's settlement of her lawsuit against the parties allegedly responsible for her husband's employment-related death. The undisputed facts are that Basil Baker died in an airplane crash.

His widow ("widow") received compensation and other benefits from the Fund in the amount of $28,995.83. The widow's wrongful death claim against those, other than Baker's employer, whom she claimed were responsible for the crash, was assigned by operation of law to the Fund, which reassigned the claim to the widow. Ariz.Rev.Stat.Ann. section ("A.R.S. §") 23-1023. The widow's suit resulted in a defense verdict but, on appeal, this court remanded the case for a new trial. *Lynn v. Helitec Corp.*, 144 Ariz. 564, 698 P.2d 1283 (App.1984).

In October 1985, the parties agreed to a settlement of $109,814.50; the agreement was executed on August 26, 1986. The settling defendants pledged to make the following payments to the widow: (1) $15,000.00 within ten days of the receipt of the executed agreement, intended to be used toward legal expenses; (2) $5250.50 within ten days of the receipt of the executed agreement, intended to cover the costs awarded to the widow by the court of appeals; (3) monthly annuity payments of $365.00 for ten years, beginning within 30 days of the receipt of the executed agreement; (4) annuity payments of $2000 on June 15, 1989, $4000 on June 15, 1990, $6000 on June 15, 1994, and $10,000 on June 15, 1995. In addition, the agreement provided that the following amounts would be paid to the widow's attorney, Ireland: (1) annuity payments of $365.00 per month for ten years, beginning within 30 days of the receipt of the executed agreement; (2) annuity payments of $2000 on June 15, 1989, $4000 on June 15, 1990, $6000 on June 15, 1994, and $10,000 on June 15, 1995. Finally, the agreement set forth a $28,996.00 annuity payment to the Fund on June 15, 2001. The Fund was not a party to, and did not approve, the settlement agreement.

After learning of the agreement, the Fund filed suit against the widow, Ireland and the settling defendants, claiming that these parties had compromised its statutory lien rights against the settlement proceeds. The Fund asserted that it had the right to approve the agreement and that

the parties had an obligation to pay its statutory lien before disbursing the proceeds to any other parties, including the widow and the annuity company. According to the Fund, because the parties had structured a settlement that failed to immediately pay it the full amount of its statutory lien, it could recover the amount of its lien from any of the participating parties, their insurers or their attorneys.

The widow defaulted; the Fund, the settling defendants and Ireland filed motions for summary judgment. The trial court granted the motions, ruling that the Fund had no right to obtain a personal judgment against the settling defendants or Ireland because, as the Fund's statutory lien rights survived, it could foreclose on the lien at any time and recover both the principal and interest accruing from the date the annuities were funded in May 1986. The Fund appealed, claiming that the court erred because it has both common law and equitable causes of action against the parties for their improper disbursal of the settlement proceeds.

## DISCUSSION

The Fund claims that the settling defendants and Ireland damaged it when, without the Fund's consent, the parties executed a settlement agreement postponing the payment of its lien until 2001. We first must consider whether the Fund's lien rights were compromised by the deferral of its payment. If so, we then must address whether the settling defendants and Ireland are liable to the Fund for any damages it suffered from the delay in payment. In reviewing the summary judgment, we view the facts and inferences in the light most favorable to the Fund. Arizona Rule of Civil Procedure 56(c); *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985).

### A. Compromise of Claim

The provisions of A.R.S. § 23–1023(C) state that the Fund's written approval of a settlement agreement is required when the beneficiary "compromise[s]" the claim "at an amount less than the compensation and medical, surgical and hospital benefits provided" to the beneficiary by the Fund.[1] The Fund argues for a broad interpretation of the statute to prohibit the structuring, without its consent, of a settlement such that it would not be reimbursed until a future date. The settling defendants and Ireland advocate a narrower interpretation of the statute, one requiring approval by the Fund only when the amount of the settlement is less than the Fund's lien.

To interpret the legislative intent of a statute, we must examine the policy behind it and the evil sought to be remedied. *E.g., Carrow Co. v. Lusby*, 167 Ariz. 18, 21, 804 P.2d 747, 750 (1990); *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990); *State ex rel. Ross v. Nance*, 165 Ariz. 286, 288, 798 P.2d 1295, 1297 (1990). In *Hornback v. Industrial Commission*, 106 Ariz. 216, 219, 474 P.2d 807, 810 (1970), the supreme court considered the underlying policy of A.R.S. § 23–1023(C) and attributed the necessity of the Fund's settlement approval to the fact that the Fund has no direct rights against third parties, but rather is subrogated to the rights of the employee. "[A] major purpose of the approval requirement is to prevent an employee

1. Section 23–1023(C) states: "If [the employee or his dependents entitled to workers' compensation] proceeds against [a third party not in the same employ], compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. This lien shall not be subject to a collection fee. The amount actually collectable shall be the total recovery less the reasonable and necessary expenses, including attor-neys' fees, actually expended in securing such recovery. The insurance carrier or person shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of this chapter for such case. Compromise of any claim by the employee or his dependents at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of the compensation fund, or of the person liable to pay the claim."

from accepting too small a settlement and prejudicing the subrogation rights of [the Fund]." *Id.*

■ To attain the statute's purpose of protecting the rights of the Fund, the requirement of Fund approval for settlements must be broadly interpreted to cover the various manners in which the Fund's rights may be compromised. In determining whether the settlement's delay in payment to the Fund for its lien until 2001 compromised the Fund's rights, we first must decide when the Fund's lien attached to the proceeds. If the Fund is entitled to payment prior to 2001, then we must consider whether the postponed reimbursement prejudiced the Fund.

The Fund and the settling defendants concur that the Fund's lien attached at the time the agreement was executed.[2] We find support for this position in *State Compensation Fund v. Nelson*, 153 Ariz. 450, 453, 737 P.2d 1088, 1091 (1987), in which the court stated that the compensation carrier's lien attaches when the beneficiary comes into possession of " 'the amount actually collectable.' " In this context, the word "possession" means not that one physically has something but that one has power or control over it. *See Websters New Universal Unabridged Dictionary* (2d ed. 1983); *The Random House Dictionary of the English Language* (2d ed. 1987) (unabridged).

The agreement here was negotiated between the settling defendants and Ireland, who represented the widow's interests and, perhaps, his own concerns. While under the terms of the agreement, parties other than the widow received a portion of the proceeds, she, and arguably Ireland, were the persons who approved the settlement and had the power to determine the disbursement. That the widow and Ireland may have chosen the particular recipients due to external statutory or contractual obligations does not alter the fact that the decision as to whether to accept the agreement was the widow's, at least in part. Therefore, even though the widow did not personally receive all of the settlement proceeds, she possessed power over the funds. We agree with the Fund and the settling defendants and conclude that the widow came into possession of the amount actually collectable at the time the agreement was executed; thus, that is when the Fund's lien attached. *See Nelson*, 153 Ariz. at 453, 737 P.2d at 1091; *see generally Dempsey v. Oliver*, 93 Ariz. 238, 241, 379 P.2d 908, 909 (1963) (judgment liens generally attach to after-acquired property immediately).

Although the Fund's lien attached upon the August 26, 1986, execution, under the agreement it will not receive its money until June 15, 2001. By any calculation, the present value of the $28,996.00 the Fund is scheduled to receive on that date is less than the amount of its $28,995.83 lien.[3] Nonetheless, the settling defendants argue that, because under *Nelson*, 153 Ariz. at 453–54, 737 P.2d at 1091–92, the Fund is entitled to interest from the time the widow received the proceeds until it is paid, the Fund has not suffered any economic loss due to the structure of the agreement. We reject this assertion because, even if the Fund were to receive interest, it did not consent to have its share of the proceeds withheld in exchange for interest. The Fund's rights were compromised both by the difference in value between that to which the Fund has a statutory right and that which it is scheduled to receive under the agreement and by the delay it is forced to sustain before receiving its payment. Therefore, its approval of the agreement was required.

### B.  Common Law Causes of Action

Both the settling defendants and Ireland contend that the Fund is precluded from asserting any common law claims against them because its sole remedy for damages lies in the lien provision of A.R.S. § 23–

---

**2.** Ireland takes no position as to when the Fund's lien attached to the settlement proceeds.

**3.** The amount of the Fund's lien is $28,995.83, while the amount it is scheduled to receive on June 15, 2001 is $28,996.00. We assume that the parties simply rounded off the figure.

1023(C). The Fund responds that the legislature's failure to expressly state that the common law coexists with the statute does not establish that the common law causes of action have been abolished.

■ When statutory provisions and common law rights can be construed as consistent, we are required to interpret all inferences in favor of consistency. *In re Estate of Thelen,* 9 Ariz.App. 157, 160–61, 450 P.2d 123, 126–27 (1969); *see also Carrow,* 167 Ariz. at 21, 804 P.2d at 750 (absent specific language, statute should not be construed as causing change in common law). Unless otherwise provided, a statutory remedy is merely cumulative to any common law remedies. *Tucson Gas & Electric Company v. Schantz,* 5 Ariz.App. 511, 515, 428 P.2d 686, 690 (1967).

■ There is no provision in A.R.S. § 23–1023(C) which limits the Fund's rights to that of a statutory lien. Common law rights, such as those asserted here by the Fund, can be interpreted as consistent with the statute's right to a lien because the causes of action do not contradict one another but, rather, provide alternative methods for enforcing the Fund's rights. Although a statutory remedy is exclusive when the statute creates both a right and a complete remedy, *e.g., Valley Drive–In Theatre Corp. v. Superior Court,* 79 Ariz. 396, 400, 291 P.2d 213, 215 (1955), A.R.S. § 23–1023(C) creates only a right because no lien foreclosure procedures are provided. Therefore, we conclude that the Fund may bring common law causes of action, in addition to asserting its statutory lien right, against the settling defendants and Ireland.[4]

## C. Claims Against the Settling Defendants

The Fund asserts various claims against the settling defendants based upon the damages it incurred when its interest was compromised under the settlement agreement: intentional interference with a contractual relationship, conversion, unjust enrichment, money had and received, quasi-contract, constructive trust, and breach of implied contract.

■ The tort of intentional interference with contractual relations occurs when one party intentionally and improperly interferes with the contract rights of another. *Snow v. Western Sav. & Loan Ass'n,* 152 Ariz. 27, 34, 730 P.2d 204, 211 (1986). The evidence does not support the Fund's claim that the settling defendants interfered with the contract between the widow and the Fund. These defendants agreed to settle the wrongful death suit and paid the settlement funds as directed by the widow, and perhaps also by Ireland. This does not constitute wrongful interference and, therefore, the Fund does not state a cause of action for interference with contract.

■ The central issue underlying the remaining claims is whether the settling defendants, who were on notice that the Fund had a lien on the settlement proceeds,[5] had an obligation in settling the wrongful death suit to pay the Fund directly the full amount of its lien before making payments to the widow. The Fund argues that these defendants' failure to pay the Fund's lien breached their obligation to the Fund and therefore that they are liable for the amounts improperly disbursed to parties other than the Fund. Although the Fund and the settling defendants agree, as do we, that the Fund's lien attached at the time the agreement was executed, the Fund claims that the settling defendants' obligations continued on, while the settling

---

**4.** None of the parties challenges whether the Fund's equitable claims for relief may be pursued in light of the statutory lien provision. We note, however, that equitable claims also may be raised as a court has equity jurisdiction when a right exists that cannot be adequately protected by common law remedies. *Grand International Brotherhood of Locomotive Engineers v. Mills,* 43 Ariz. 379, 398, 31 P.2d 971, 979 (1934).

In addition, absent a legislative procedure for enforcing statutory liability, equity can be utilized for enforcement. *Roberts v. Spray,* 71 Ariz. 60, 67, 223 P.2d 808, 812 (1950).

**5.** It is undisputed that the settling defendants were aware of the Fund's lien prior to entering the settlement agreement.

**496**

defendants argue that their responsibility regarding the proceeds ended at that time.

As previously discussed, the Fund's lien attached when the settlement agreement was executed on August 26, 1986; prior to that date, the Fund had no right to the money. Upon the disbursement of the proceeds, the settling defendants lost all control and discretion regarding the settlement funds.[6] The Fund, therefore, has no cause of action against the settling defendants based upon conversion, unjust enrichment, money had and received, quasi-contract, constructive trust or breach of implied contract because, by the time the Fund had a right to the proceeds, the settling defendants had lost their power over the money. *Focal Point, Inc. v. U–Haul Co. of Arizona, Inc.*, 155 Ariz. 318, 319, 746 P.2d 488, 489 (App.1986) (conversion requires intentional exercise of dominion or control which seriously interferes with right of another to control); *Stapley v. American Bathtub Liners, Inc.*, 162 Ariz. 564, 568, 785 P.2d 84, 88 (App.1989) (unjust enrichment occurs when, with no legal remedy and without justification, one party is enriched while another is caused to be impoverished); *McCarrell v. Turbeville*, 51 Ariz. 166, 173, 75 P.2d 361, 364 (1938) (money had and received consists of a defendant holding money which in equity and good conscience belongs to plaintiff); *John A. Artukovich & Sons, Inc. v. Reliance Truck Co.*, 126 Ariz. 246, 248, 614 P.2d 327, 329 (1980) (quasi-contract occurs when, regardless of the parties' intent, one party unjustly benefits at the expense of the other); *Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 288, 697 P.2d 674, 681 (1985) (constructive trust created when one person enriches himself by wrongly holding another's property); *Carroll v. Lee*, 148 Ariz. 10, 13, 712 P.2d 923, 926 (1986) (implied contract is inferred as matter of reason and justice from acts and conduct of parties and their circumstances).

Accordingly, we affirm the summary judgment in favor of the settling defendants.

**6.** The agreement provides that the settling defendants unconditionally promise to pay the amounts detailed in the settlement. In addition,

### D.  Claims Against Ireland

■ According to A.R.S. § 23–1023(C), the "amount actually collectable," to which amount the Fund's lien attaches, is defined as "the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery." Ireland contends that any right the Fund may have to approve a settlement is inapplicable to the fees and costs he received because those are exempt under A.R.S. § 23–1023(C). The Fund claims that Ireland structured the settlement to provide himself with greater fees and expenses than the amount to which he was entitled and that the excess compensation is not exempt from its lien.

It is not clear from the record whether Ireland received amounts in excess of reasonable and necessary fees and expenses. By signing the settlement agreement, the widow appears to have agreed to the amount of fees and costs specified in that agreement. However, there is a material issue of fact as to whether Ireland structured the agreement to provide himself with excessive fees and expenses. If the compensation Ireland received was more than a reasonable amount for his services, the Fund's lien attached to those excess sums. *See* A.R.S. § 23–1023(C) (only reasonable and necessary fees and expenses exempt from lien).

■ The Fund also asserts that Ireland's disbursement to the widow, and his involvement with directing the payment on the widow's behalf, make him liable for the full amount of the Fund's lien under the theories of unjust enrichment, quasi-contract and constructive trust. If the Fund can show that Ireland was unjustly enriched by wrongfully increasing his share of the proceeds at its expense, then it may be able to recover on the grounds raised. *Stapley*, 162 Ariz. at 568, 785 P.2d at 88 (unjust enrichment); *Artukovich*, 126 Ariz. at 248, 614 P.2d at 329 (quasi-contract);

the annuities which the settling defendants funded were purchased and in place by the time the agreement was executed.

*Burch,* 144 Ariz. at 286–87, 697 P.2d at 679–80 (constructive trust).

Regardless of whether Ireland's fees and costs were reasonable, the Fund argues that he is liable under the theories of conversion, intentional interference with a contractual relationship, breach of implied contract and money had and received.

■■■■■ It is clear from the record that the settling defendants paid the settlement amounts at Ireland's direction. It is unclear, however, whether Ireland was acting as the widow's attorney or on his own behalf when making these directions because much of the negotiation, including letters specifying the terms of settlement and funding the annuities, occurred after Ireland was suspended from the practice of law in Arizona. *Matter of Ireland,* 146 Ariz. 340, 706 P.2d 352 (1985).

If the Fund can establish that Ireland exercised control over the proceeds in a way that seriously interfered with the Fund's rights, Ireland may be liable for conversion. *Focal Point,* 155 Ariz. at 319, 746 P.2d at 489.[7] Even if Ireland did not actually possess the settlement proceeds on the widow's behalf, if he directed disbursement of the settlement proceeds in a manner other than to pay the Fund's lien, he may be liable for intentional interference with the widow's contractual obligation to the Fund. *Snow,* 152 Ariz. at 34, 730 P.2d at 211; *Wagenseller,* 147 Ariz. at 386–88, 710 P.2d at 1041–43. However, because Ireland had no express or implied-in-fact contractual relationship with the Fund, as he was the widow's attorney, not the Fund's, even if he did act on his own behalf when directing the settlement disbursement, there are no grounds for breach of implied contract. *Carroll,* 148 Ariz. at 13, 712 P.2d at 926. Finally, if the Fund can establish that Ireland received compensation which in all fairness belongs to the Fund, he may be liable for money had and

received. *McCarrell,* 51 Ariz. at 173, 75 P.2d at 364.

Because we find that the material issues of whether Ireland's fees and expenses were reasonable and whether he was acting on his own behalf when directing the proceeds were unresolved by the trial court, we reverse the grant of summary judgment in favor of Ireland and remand this matter for further proceedings.

## CONCLUSION

For the foregoing reasons, we affirm the summary judgment in favor of the settling defendants and reverse the summary judgment in favor of Ireland. Accordingly, we remand this case for further proceedings as to the Fund's claims against Ireland. In the exercise of our discretion, we decline to award attorneys' fees in this case.

TAYLOR, P.J., and GERBER, J., concur.

---

7. The facts in this case are distinguishable from *Nelson* and, therefore, we do not find controlling the statement in the court of appeals' opinion that there were no statutory grounds for recovery against the attorneys in that case.

*State Compensation Fund v. Nelson,* 153 Ariz. 446, 450, 737 P.2d 1084, 1088 (App.1986), *aff'd in relevant part, Nelson,* 153 Ariz. at 454, 737 P.2d at 1092.